161 N.J. Super. 468 (1978)
391 A.2d 1247
STATE HEALTH PLANNING AND COORDINATING COUNCIL, APPELLANT,
v.
WILLIAM F. HYLAND, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY AND THE HEALTH CARE ADMINISTRATION BOARD, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 30, 1978.
Decided August 4, 1978.
*470 Before Judges FRITZ, ARD and GAULKIN.
Mr. Edward H. Tetelman argued the cause for the appellant.
Mr. Frederick S. Title, Deputy Attorney General, argued the cause for the respondents (Mr. John J. Degnan, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by ARD, J.A.D.
This is an appeal by the State Health Planning and Coordinating Council (Council) from a decision of the Attorney General denying the Council legal representation at a hearing before the Health Care Administration Board.
Established by state law, the Council is responsible for coordinating the health planning activities throughout the State, and its duties include assessing whether proposed *471 medical facilities meet statewide standards to deliver health care services. As part of its coordination responsibility it reviews all certificate of need applications by hospitals and like institutions. The aforesaid certificate of need process requires that applications for construction of new health services by health care facilities be filed with the Department of Health. N.J.S.A. 26:2H-6; N.J.A.C. 8:33-1.3. The Council reviews the application in light of statutory criteria to determine if it meets statewide needs and standards. Its determination to approve or deny the project is communicated to the Commissioner of Health. The Commissioner may approve or deny the application, but if a determination is made contrary to the Council's recommendation, the Council and the applicant have a right to a fair hearing pursuant to N.J.S.A. 26:2H-9. This hearing is held before a hearing examiner of the Health Care Administration Board.
The Council in the normal course of its business was considering applications of Cooper Medical Center (Cooper) and Our Lady of Lourdes Hospital (Lourdes) for a certificate of need with respect to the establishment of Perinatal Level III facilities.[1] The Commissioner of Health, prior to a recommendation by Council, announced informal approval of the Lourdes' application for a certificate of need. The Council, after several months of debate and discussion, voted to recommend the issuance of a certificate of need to Cooper. This resolution had been preceded by the same recommendation from the local Health Systems Agency. The Commissioner then announced that she was overturning the Council's recommendation and granted conditional approval to Lourdes. The Council then applied for a "fair hearing" pursuant to N.J.S.A. 26:2H-9.
*472 In a separate action Cooper moved for leave to appeal to this Court. Pursuant to R. 2:11-2 the court granted leave to appeal and determined the appeal on the papers submitted on the motion and oral argument. We vacated the decision of the State Commissioner of Health granting a certificate of need to Our Lady of Lourdes because of the Commissioner's failure to grant the applicants a fair hearing in accordance with N.J.S.A. 26:2H-9. The applications were remanded to the Department of Health for a hearing pursuant to the aforementioned statute.
In preparation for the hearing the Council requested the Attorney General to appoint an attorney to represent it at the hearing. The Council alleged it was entitled to such an appointment pursuant to N.J.S.A. 52:17A-4(e) and (g) or N.J.S.A. 52:17A-13. The Attorney General informed the Council that he could not represent it at the hearing since his office already represented the Commissioner. He also refused to appoint special counsel concluding that the Council's position on appeal was identical to Cooper's. The pertinent language contained in the letter is as follows:
It is not feasible for the office of the Attorney General to represent the Council on an appeal, since it is already representing the position of the Commissioner of Health at that hearing and ultimately may be called upon to advise the Health Care Administration Board. Therefore, any legal representation of the Council would have to be by the appointment of Special Counsel pursuant to N.J.S.A. 52:17A-13 with my approval and that of the Governor.
I have concluded that this would not be an appropriate occasion for the appointment of Special Counsel. Cooper Medical Center has taken its own appeal to the Health Care Administration Board and it appears that it will argue the same position before the HCAB as that of the Council. Therefore, it would not seem appropriate to retain a second attorney at public expense to argue precisely the same position as will be argued anyway by the attorney for Cooper Medical Center. Rather, it is our opinion that the interests of the Council in conveying its views to the HCAB can be adequately served by the preparation of written comments regarding the Council's own recommendations and the contrary decision of the Commissioner.
*473 The Council took exception to this and wrote to him protesting the decision. Through its chairman, the Council stated, among other things:
* * * In order to effectively perfect our appeal, the SHPCC [Council] must be represented by counsel. However, as the Attorney General's Office cannot represent the SHPCC because they already represent the Commissioner, it is clear that the SHPCC must have independent counsel.
It is of no consequence that Cooper Medical Center may have a similar position to the SHPCC. The SHPCC may ultimately take a different position in this matter and in terms of presenting our point of view, the SHPCC has the right to appeal under the law and is exercising it.
Thereafter, the Council was advised that the Attorney General felt his original determination appropriate. The hearing has been stayed pending this appeal.
Before us the appellant alleges: (1) the Council requires legal representation to meaningfully present its position at the mandated hearing; (2) the Attorney General's discretion is limited by the common sense interpretation of N.J.S.A. 26:2H-9, and (3) the appeal is not interlocutory.
Initially, we do not believe that an application for leave to appeal pursuant to R. 2:5-6(a) is necessary. We conceive this case to be a review of the final decision of a state officer and consequently is before us as of right. R. 2:2-3(a) (2).
The statutes upon which the Council relies are N.J.S.A. 52:17A-4(e) and (g) as well as N.J.S.A. 52:17A-13. In pertinent part they provide:

N.J.S.A. 52:17A-4.
The powers and duties of the Division of Law shall be the powers and duties now or hereafter conferred upon or required of the Attorney General, * * *:
* * *
e. Act as the sole legal adviser, attorney or counsel, notwithstanding the provisions of any other law, for all officers, departments, boards, bodies, commissions and instrumentalities of the State Government in all matters * * * and represent them in all *474 proceedings or actions of any kind which may be brought for or against them in any court of this State; * * *
* * *
g. Attend generally to all legal matters in which the State or any officer, department, board, body, commission or instrumentality of the State Government is a party or in which its rights or interests are involved; * * *

N.J.S.A. 52:17A-13.
No special counsel shall be employed for the State or for or by any officer, department, board, body, commission or instrumentality of the State Government except by authority of the Attorney-General, and then only with the approval of the Governor, and provided that appropriations have been made therefor, unless the matter be of such an emergency and shall be so declared by the Governor.
Unquestionably, the aforementioned statutes demonstrate the Council's eligibility, as a state board or body, to be represented by the Attorney General. However, eligibility does not constitute an affirmative duty on the part of the Attorney General to represent or supply the Council an attorney at public expense on request. Although the appellant fails to cite it, we deem N.J.S.A. 52:17A-12 to be of substantial significance. It clearly indicates the discretionary authority vested in the Attorney General. It states:
The Attorney-General may assign an assistant Attorney-General, a deputy Attorney-General or an assistant deputy Attorney-General to serve in any legal capacity in or for any officer, department, board, body, commission or instrumentality of the State Government on a part-time or full-time basis whenever, in the judgment of the Attorney-General, such assignment will contribute to the efficiency of the operation of such office, department, board, body, commission or instrumentality, * * *.
While at first blush this statute may appear to provide only for the permanent or semi-permanent appointment of deputies either on a full-time or part-time basis to various arms of State Government, we are satisfied that it demonstrates an obvious legislative intent to invest broad discretion in the Attorney General in connection with any representation sought. The need for this discretion becomes obvious when *475 one anticipates the chaos which would otherwise result if any officer, department, board, body, commission or instrumentality were able to command representation without bound, for any minor squabble in which it became involved.
The discretionary authority of the Attorney General in the statute is consistent with his common law powers. Our Supreme Court outlined the parameters of the Attorney General's functions in Alexander v. N.J. Power & Light Co., 21 N.J. 373 (1956), when it pointed out:
Under the common law of England, the Attorney-General was the chief law officer and adviser of the Crown upon whom devolved the management of its legal affairs and the prosecution of all suits, civil and criminal, in which the crown had an interest; and these functions and responsibilities, in the absence of constitutional limitations, appertain to the office of Attorney-General in New Jersey, as a part of our common-law inheritance, subject to enlargement or abridgment by the legislative authority. Wilentz v. Hendrickson, 133 N.J. Eq. 447 (Ch. 1943), Jayne, V.C., affirmed 135 N.J. Eq. 244 (E. & A. 1944). In equity, as at law, the Attorney-General has the right, save as provided otherwise by the lawmaker, to intervene by suit for the protection of the property of the sovereign or the interests of the public, where such are directly involved. [at 380; citations omitted]
N.J.S.A. 52:17A-12 neither enlarges nor abridges this common law discretionary power. This heritage was recently reaffirmed in Evans-Aristocrat Industries, Inc. v. Newark, 75 N.J. 84 (1977).
The Attorney General's public role derives from the common law and, except as altered by the Legislature, his powers and duties as a governmental officer stem from the traditions of the common law. * * * [at 94]
Although the appellant's brief alleges its position differs from the position of Cooper, the record reveals that the Council formally voted to endorse Cooper. Under these circumstances neither Council nor its attorney could properly take a different position at the hearing. We cannot conclude that the Attorney General was unreasonable in deciding that *476 his office could not properly represent both the Commissioner and Council without conflict. Additionally, his interest in minimizing public expense was a legitimate concern. Moreover, there was a reasonable basis for his determination that the interest of Council, Cooper and the local Health Systems Agency coincided in such a fashion that Council would not be denied a fair hearing notwithstanding being without an attorney. We also see no reason why individual members of Council may not appear and testify at the hearing in addition to the written comments suggested in the letter of the Attorney General. We are satisfied there is no abuse of discretion in the Attorney General's failure to employ special counsel pursuant to N.J.S.A. 52:17A-13. Cf. Secretary of Admin. & Fin. v. Attorney General, 367 Mass. 154, 326 N.E.2d 334 (Sup. Jud. Ct. 1975); Delaney v. Penza, 151 N.J. Super. 455 (App. Div. 1977); Edmond v. Public Advocate Dept., 137 N.J. Super. 82 (App. Div. 1975).
Although the Attorney General argues that his common law powers in this area are absolute and may not be challenged by other state officials in the courts, we need not meet this issue as we are satisfied that the appellant has, in any event, failed to demonstrate that the Attorney General's decision is arbitrary, capricious or unreasonable. To recapitulate, we are satisfied that his decision not to appoint counsel must be upheld for the following reasons:
(1) N.J.S.A. 52:17A-12 represents a statutory grant by the Legislature giving him discretion in appointing representation;
(2) Cooper, which has retained counsel, is espousing the same point of view as Council;
(3) Council may not only present documentary evidence at the hearing, but any individual member of Council may be heard.
We conclude that in the circumstance of the community of interest of the Council and Cooper there is no duty to appoint an attorney or special attorney to represent the Council, and the refusal of the Attorney General to appoint same was not arbitrary, capricious or unreasonable.
*477 The appeal is dismissed.
FRITZ, P.J.A.D. (concurring).
The emphasis of the dissent on the present apparent disparity between "the interests of the Council and Cooper" impels my brief comment in concurrence with the opinion written by Judge Ard.
Whatever else is to be said, the fact of the matter is that after hardy debate the Council rejected a motion to refuse endorsement to either Lourdes or Cooper. Thereafter it passed a motion affirmatively endorsing Cooper.
Were the first motion to have been passed, I would have considered the Council to have been entitled to a hearing under N.J.S.A. 26:2H-9 because certainly then no decision favoring either Lourdes or Cooper could have been made other than "contrary to the recommendations of the State Health Planning Council." In such circumstances, where there appeared an obvious conflict on important issues, my inclination would have been to require appointment of counsel for the reasons expressed by the dissent.
But this did not happen. The Council chose to go on record favoring the appointment of Cooper. This being so, the Council can suffer no harm at all by being unrepresented at the hearing. Its interests  by its own resolution identical with those of Cooper  will be earnestly represented by the parochial Cooper presentation. If the recommendation of the Council is rejected, it will not be for lack of representation. If the recommendation of the Council is accepted, then certainly it should not be heard to complain of lack of representation.
Consequently I quite agree, as set forth in the majority opinion, that "in the circumstance of the community of interest of the Council and Cooper" (emphasis supplied), the Attorney General was not arbitrary in his refusal to appoint counsel.
GAULKIN, J.S.C. (temporarily assigned) (dissenting).
The court sustains the Attorney General's action because *478 it finds "a reasonable basis for his determination that the interest of Council and Cooper coincided in such a fashion that Council could not be denied a fair hearing notwithstanding being without an attorney." I see the interests of the Council and Cooper as not only distinct but substantially at odds, and would conclude that under the circumstances disclosed by the present record the refusal of representation to the Council constitutes an arbitrary and unreasonable impediment to the Council's performance of its public duties under the Health Care Facilities Act, N.J.S.A. 26:2H-1 et seq.
The full factual background must be stated. Although the record is not adequately documented, it appears that the Perinatal Level III certificate of need applications of both Cooper and Lourdes have been under consideration since 1975. Those applications were initially reviewed by both the local Health Systems Agency (HSA) (N.J.S.A. 26:2H-2(g)) and by personnel of the Department of Health. Those agencies recommended rejection of both the Cooper and Lourdes applications. Their recommendations were considered by the Review Committee of the Council, which also recommended denial of both applications; and on June 24, 1977 the Council itself voted to deny both applications. The minutes of that Council meeting recite that "the fact that influenced the HSA and Review Committee is that there are two major facilities who are vying with each other and attempting to negotiate. If both projects are denied they may be forced to sit down together."
The Commissioner then deferred her own decision as to both applications and requested the HSA and department personnel to review them again.[1] At the next monthly meeting *479 of the Council on July 29, 1977, the Commissioner informed the Council that she had "made a commitment to Lourdes to make a decision by September 30, 1977." The minutes of that meeting describe the following requests she then made of the Council:
Given this short time frame, she requested Council's advice and possible concurrence in allowing her to make a decision on these applicants based upon the recommendation of the HSA which would be delivered directly to her; and further, since such an approach will overturn one of two recommendations of the Council on the perinatal center, she requested assurance that the SHPCC would not feel the need to appeal her decision.
The Council refused to accede to these requests to bypass established procedures but agreed to consider any further HSA recommendation at the September 30, 1977 meeting.
On September 30, 1977 the Council reviewed the additional staff work that had been done on the Cooper and Lourdes applications. The HSA now recommended the issuance of a certificate of need to Cooper, although the minutes indicate that the HSA "felt that neither [Cooper nor Lourdes] had met the standards." The Commissioner told the Council that she acknowledged that "neither institution presently fully demonstrates the capability of meeting the State's standards" and that "from a professional point of view one would strongly desire to defer." However, she stated her view that "the need is great now and a commitment has been made, both procedurally and morally, to make a decision today." The minutes note that "solely on that basis she recommended a very conditional certificate of need for Our Lady of Lourdes."
In the ensuing discussion various members took issue with the recommendation and at least one member objected that in announcing her decision before a Council recommendation had been voted, the Commissioner
* * * was not complying with the provisions of Section 9 of Chapter 136, the Health Facilities Planning Act of 1971, that requires her *480 to act only after receipt of a SHPCC recommendation and was also implying that the SHPCC was free to make whatever recommendation they desired but the decision has already been made.
A motion was made to defer selection of either hospital as a Level III Perinatal Center; that motion was defeated following discussion which included the observation of one member that "if the Commissioner has already stated that she is going to grant a conditional approval to Lourdes, to defer would be no recommendation from the Council."
It was in this context that the Council then voted to recommend the issuance of a certificate of need to Cooper. Immediately following that vote the Commisisoner announced that she would grant a conditional approval to Lourdes, whereupon the Council voted to "appeal the decision" of the Commissioner. Finally, and "for completion of the record" Council voted "non-endorsement" of the Lourdes application.
The Council thereupon asserted its right to a hearing before the Health Care Administration Board. N.J.S.A. 26:2H-9. As set forth in its brief before us, the Council seeks at the forthcoming hearing to challenge the Commissioner's action on both procedural and substantive grounds. As to procedure, it urges that the Commisisoner's approval of the Lourdes application was not timely (N.J.A.C. 8:33-2.2(b)) and that there was a failure "to supply needed information by the Department of Health to the Council as required under the federal law." The Council also raises these objections:
In this case, the Council was unable to make a meaningful recommendation since the Commissioner had made her decision prior to Council's recommendation. Moreover, the ex parte meeting with the Governor's office and Lourdes, followed by her immediate attempt to remove the Council from decision-making altogether, when added to her decision before Council's discussion or recommendation, demonstrate a complete disregard of the prescribed statutory and regulatory process.
*481 With respect to the merits of the Commissioner's action, the Council contends that
* * * both Cooper and Lourdes are unqualified under state standards to become Level III centers and they represent two overzealous competing institutions who failed to establish multi-institutional delivery of Level III services.
The positions urged by the Council are thus clearly at odds with those of Cooper; for if the Council prevails, Cooper as well as Lourdes will be denied a certificate of need.
Nor can an identity of interest fairly be inferred from the September 30, 1977 vote of the Council recommending the issuance of the certificate to Cooper. As already noted, that vote may have been tactical only, to assure that the Commissioner's then-anticipated action would overrule a Council "recommendation" and thus entitle the Council to a hearing under N.J.S.A. 26:2H-9. In any event, the circumstances surrounding that vote negate any suggestion that the Council thereby aligned itself with Cooper.
In this setting, the refusal of the Attorney General to provide counsel represents an unwarranted hindrance to the performance by the Council of its public duties. The Council is entrusted both under federal and state law with an important role in controlling and directing the establishment of health care facilities throughout the state. N.J.S.A. 26:2H-3; 42 U.S.C.A. § 300m-3. The Council is specifically granted a right to a hearing whenever its recommendation concerning a certificate of need for a proposed facility is overruled by the Commissioner. N.J.S.A. 26: 2H-9. That right, which is entirely distinct from similar rights granted to applicants, is clearly designed to assure that the public interest which the Council represents will be fully presented and considered both in the administrative process and in any judicial review.
Here the Council wants to do precisely what the statute authorizes it to do. In behalf of the public interest it seeks to present issues which may well be substantial and which *482 will not otherwise be raised. Counsel would surely be of significant assistance in the hearing, which may become lengthy and highly technical. Cf. St. Vincent's Hospital v. Finley, 154 N.J. Super. 24 (App. Div. 1977). The Council is without authority to employ an attorney itself. N.J.S.A. 52:17A-11.[2]
Under all of these circumstances, I cannot characterize as "reasonable" the decision of the Attorney General  who represents the Commissioner  to refuse representation to the Council, her adversary. Nor can I accept as an effective substitute the suggested reliance on written submissions or pro se appearances of individual Council members in lieu of representation in a hearing of this nature.
Accordingly, I would hold that under the circumstances disclosed here the determination of the Attorney General not to provide counsel was arbitrary and unreasonable, and I would direct that he take the steps available to him under N.J.S.A. 52:17A-12 and 13 to provide representation to the Council. With respect to the possible appointment of special counsel under N.J.S.A. 52:17A-13, I see no present need to consider issues as to the necessary consent of the Governor or the availability of appropriations therefor. Those issues are hypothetical at this time and there is no reason to anticipate that they will require resolution at all. Cf. P, T & L Const. Co. v. Comm'r, Dept. of Trans., 55 N.J. 341, 346 (1970).
NOTES
[1] A Level III Perinatal Center is designed to handle high risk or complicated maternity problems as well as normal births. Only one center is necessary in the Camden area, and both hospitals are competing for the single certificate.
[1] The Council's brief asserts that this occurred after "the Commissioner or her representative, Lourdes, and a representative of the Governor's office met independently, without Cooper, and agreed to return the applications to the HSA for further study"; but the record offers no support for that assertion.
[2] In this proceeding the Council is represented through the volunteered services of a lawyer-member of the Council.