**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1805-24

PREVENTIVE MEDICINE OF
NEW JERSEY, GEORGE
MELLENDICK, M.D. and
KRISTEN KENT, M.D.,

      Plaintiffs-Appellants,

v.

NEW JERSEY TURNPIKE
AUTHORITY, DISHANT PATEL,
R.N. and KAREN SPOONER,
R.N.,

      Defendants-Respondents.

_____

Argued October 6, 2025 – Decided December 2, 2025

Before Judges Sabatino, Natali, and Bergman.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3637-24.

Steven I. Adler argued the cause for appellants (Mandelbaum Barrett, PC, attorneys; Steven I. Adler and Frank A. Custode, of counsel and on the briefs).

Thomas A. Abbate argued the cause for respondents (Decotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys; Thomas A. Abbate and William J. Hamilton, on the brief).

PER CURIAM

On leave granted, plaintiffs Preventive Medicine of New Jersey (PMNJ), George Mellendick, M.D., and Kristen Kent, M.D., appeal from a January 17, 2025 order denying, on a without prejudice basis, their application to disqualify DeCotiis, Fitzpatrick, Cole & Giblin, LLP (Decotiis), as counsel for defendants New Jersey Turnpike Authority (NJTA), Dishant Patel, R.N. and Karen Spooner, R.N., under Rules of Professional Conduct (RPCs) 1.7 and 3.7. After considering the parties' arguments against the record and applicable legal principles, we affirm.

NJTA provides medical services to its employees at a clinic in its Woodbridge offices. NJTA contracted with Hackensack Meridian Health (HMH), which, in turn, subcontracted with PMNJ to operate the clinic. PMNJ is owned by Dr. Mellendick, who is the medical director of the clinic and who is also responsible for oversight of the clinical staff. Dr. Mellendick hired Dr. Kent to assist in providing medical services at the clinic when he was unavailable. Neither Dr. Mellendick nor Dr. Kent are employees of NJTA. The

2

relationship between NJTA and PMNJ is determined exclusively by the contract between NJTA and HMH, and, by extension, by PMNJ's subcontract with HMH.

Nurses Patel and Spooner are NJTA employees who are assigned to the clinic as senior registered nurses. In September 2023, they filed an internal grievance about NJTA with their union regarding concerns about PMNJ's management. In addition, Nurse Patel filed a gender discrimination, harassment, and retaliation claim against Dr. Kent with NJTA's Equal Employment Opportunity (EEO) office. As a result of that filing, NJTA promptly commenced an internal investigation and retained two lawyers at the DeCotiis firm to act as outside investigators. During the investigation, NJTA barred Dr. Kent from the clinic. Dr. Kent nevertheless fully cooperated with the investigation.

According to the parties, at the conclusion of Decotiis' investigation and upon receipt of its final report, NJTA determined, in a written February 9, 2024 letter, that Dr. Kent's actions "did not amount to discrimination based upon sex nor did [she] create a hostile work environment based on a protected class."[1] According to NJTA, despite its conclusion that Dr. Kent did not discriminate or create a hostile work environment, upon "further consideration by NJTA

---

[1] The parties did not include the February 9, 2024 letter, or the report, in the record before us.

management, it was determined that there was a personality conflict, non-discriminatory hostility between Dr. Kent and NJTA's employed nurses, and suboptimal management of the clinic by PMNJ that required remediation."

After learning Nurse Patel's claims of discrimination were not sustained, that same day, Dr. Mellendick requested NJTA reinstate Dr. Kent. NJTA declined and, in a follow-up letter to plaintiffs, informed him that because of the non-discriminatory workplace conflict that remained, it would not be in patients' best interests if Dr. Kent continued to provide services at the clinic. NJTA accordingly requested that HMH and PMNJ identify a different acceptable physician within their practice to provide services under the subcontract. HMH complied and provided replacement coverage.

Plaintiffs thereafter filed a five-count complaint against defendants, alleging:

> (1) tortious interference with PMNJ's contract with HMH and prospective economic advantage with it and others; (2) tortious interference with contract and prospective economic advantage as to Dr. Kent's relationship with PMNJ; (3) hostile work environment under the New Jersey Law Against Discrimination ("NJLAD"); (4) defamation and defamation per se; and (5) intentional and/or negligent infliction of emotional distress.

4

They accused Nurses Patel and Spooner of engaging in "inappropriate conduct," culminating with the filing of their aforementioned grievances "as a ploy to protect themselves from being terminated for poor performance and insubordination . . . ." Because of their conduct, which allegedly became "more audacious" after the Decotiis investigation and report, plaintiffs alleged Dr. Kent and Dr. Mellendick were subject to "a hostile work environment and caused significant damages . . . ."

Plaintiffs further contended defendants' conduct caused "emotional distress, damage to their reputations, and probable difficulties with renewing medical licenses, renewing hospital credentials, and obtaining other jobs." Plaintiffs also maintained the nurse defendants' conduct interfered with the relationships between NJTA, PMNJ and HMH and "could result in [HMH] not renewing its contract with PMNJ."

After receiving plaintiffs' complaint, NJTA stated it "considered and ultimately did not credit PMNJ's allegations." According to defendants, HMH, nevertheless, made the independent decision to not renew its subcontract with PMNJ when it expired in September 2024. HMH now directly provides necessary services and physician coverage through its own healthcare system that supervises the onsite medical clinic.

5

DeCotiis, representing both NJTA and Nurses Patel and Spooner, filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e).  In response to defendants' application, plaintiffs filed a cross-motion to disqualify DeCotiis from representing any of the defendants, based upon its alleged concurrent conflict of interest under RPC 1.7(a)(1) and (2), and because its attorneys will be "necessary" and "likely" witnesses in violation of RPC 3.7(a).

After considering the parties' written submissions and oral arguments, the court denied plaintiffs' application to disqualify Decotiis without prejudice and explained its decision in an oral opinion.  The court first found plaintiffs failed to carry their burden to disqualify DeCotiis at such an early stage of the proceedings.  As the court explained, "we have a complaint, [but] . . . [t]here's nary a document [produced] or deposition . . . taken."  The court also noted once those events occurred the "issue will crystalize," but based on the record before it, plaintiffs' application was based on "speculat[ion]."[2]  We thereafter granted plaintiffs' motion for leave to appeal.

---

[2]   In a consent order, the court agreed with the parties' request to stay the litigation, including resolution of defendants' Rule 4:6-2(e) motion, pending the outcome of this interlocutory appeal.

A-1805-24

Before us, plaintiffs raise three primary arguments in support of their challenge to the court's order. First, they argue RPC 1.7(a)(1) mandates disqualification because the firm's representation of NJTA is "directly adverse" to its representation of Nurses Patel and Spooner. Relying on N.J. Div. of Child Prot. & Permanency v. G.S., 447 N.J. Super. 539, 572, 575 (App. Div. 2016), plaintiffs assert Decotiis' joint representation is "directly adverse" because it will result in "a manifest particularized divergence between the clients' factual contentions or legal assertions, or remedies they wish their counsel to advocate." Plaintiffs contend defendants' ethical issues cannot be waived because defendants conceded Nurses Patel and Spooner did not give informed written consent to DeCotiis' joint representation with NJTA as required by RPC 1.7(b)(1), and in any event, as a public entity, NJTA's is barred from waiving conflicts. Thus, plaintiffs maintain discovery could not possibly reveal any facts sufficient to cure the existing conflict issues, and to permit pretrial discovery on the topic would be "a waste of judicial resources."

Second, plaintiffs argue, in the event Decotiis' representation of NJTA is not "directly adverse" to its representation of the nurse defendants, RPC 1.7(a)(2) also compels disqualification because DeCotiis' representation of the nurse defendants will be "materially limited" by their representation of NJTA.

7

On this point, they maintain DeCotiis "was retained by NJTA to investigate those [nurse defendants'] claims, found against them, and now, on behalf of the [nurse defendants], must contradict [Decotiis'] own findings."

Plaintiffs also contend that any trial will necessitate DeCotiis calling, as witnesses, the attorneys who conducted the internal investigation. Plaintiffs explain NJTA will seek to have those lawyers testify that the grievances filed by Nurses Patel and Spooner were meritless in accordance with their findings and report from the internal investigation. Plaintiffs further maintain Nurses Patel and Spooner, however, will seek to have the lawyers testify "[their] report is wrong and that the grievances were filed in good faith." Relying on In re Petition for Review of Op. 552 of Advisory Comm. On Prof. Ethics, 102 N.J. 194 (1986), plaintiffs argue the DeCotiis attorneys will be unable to ethically "thread the needle" to testify the nurses' grievances were filed in good faith while also standing behind their investigatory report that found no wrongful conduct.

Third, plaintiffs argue the DeCotiis lawyers will be necessary witnesses in the case and must be disqualified because RPC 3.7(a) provides "[a] lawyer shall not act as an advocate at trial in which the lawyer is a necessary witness." Plaintiffs argue the lawyers who conducted the investigation are necessary and

likely witnesses because they must testify as to the thoroughness of the internal investigation, the findings in its report, and the information obtained from interviews conducted by the firm of the nurse defendants and Dr. Kent. Plaintiffs argue RPC 3.7(a) "begins to operate as soon as the attorney knows or believes that he will be a witness at trial" and refer to comment 3 to RPC 3.7, the advocate-witness rule, to clarify how an advocate-witness can prejudice the tribunal and the opposing party.

We first address the standard of review that guides our analysis. "[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010) (citations omitted); see also Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 274 (2012). The burden is on the movant to prove a basis for disqualification. State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015) (citing State v. Morelli, 152 N.J. Super. 67, 70-71 (App. Div. 1977)).

When deciding a motion to disqualify counsel, courts must "balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his [or her] counsel." Twenty-First Century Rail Corp., 210 N.J. at 273-74 (quoting Dewey v. R.J. Reynolds

Tobacco Co., 109 N.J. 201, 218 (1988)) (internal quotation marks omitted).  In striking that balance, courts must consider that "a person's right to retain counsel of his or her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement."  Id. at 274 (quoting Dewey, 109 N.J. at 218) (internal quotation marks omitted).

Further, applications for disqualification should be "viewed skeptically in light of their potential abuse to secure tactical advantage."  Escobar v. Mazie, 460 N.J. Super. 520, 526 (App. Div. 2019) (citations omitted).  Accordingly, courts conduct a "painstaking analysis of the facts" in determining if a conflict exists.  Dewey, 109 N.J. at 205 (quoting Reardon v. Marlayne, Inc., 83 N.J. 460, 469 (1980)) (internal quotation marks omitted).  Nevertheless, if there is "any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification."  Est. of Kennedy v. Rosenblatt, 447 N.J. Super. 444, 451 (App. Div. 2016) (quoting Herbert v. Haytaian, 292 N.J. Super. 426, 438-39 (App. Div. 1996)) (internal quotation marks omitted).

We first address whether RPC 1.7(a)(1) or 1.7(a)(2) mandate disqualification based on the current record.  Under RPC 1.7, a lawyer or a law firm is prohibited from representing a client, or more than one client, if there is a concurrent conflict of interest.  RPC 1.7(a)(1) prohibits a lawyer from

representing a client in a litigation when another client's interests is "directly adverse" to that client, and RPC 1.7(a)(2) separately compels disqualification when representation of one party is "materially limited" due to the representation of another. RPC 1.7(b) goes on to state that, in certain circumstances, clients may waive concurrent conflicts provided all clients give written "informed consent."

Where one such client is a public entity, the rules further specify that the lawyer "shall not undertake the representation of another client if the representation presents a substantial risk that the lawyer's responsibilities to the public entity would limit the lawyer's ability to provide independent advice or diligent and competent representation to either the public entity or the client." RPC 1.8(k). Moreover, where such a conflict exists, "[a] public entity cannot consent to representation otherwise prohibited by this Rule." RPC 1.8(l).

RPC 1.7 embodies "the fundamental understanding that an attorney will give 'complete and undivided loyalty to the client' . . . [and] 'should be able to advise the client in such a way as to protect the client's interests.'" State ex rel. S.G., 175 N.J. 132, 139 (2003) (quoting In re Dolan, 76 N.J. 1, 9 (1978)). When a conflict develops, an attorney must withdraw from the representation of all parties. See McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 497 (App. Div.

2011) (explaining that "when [jointly represented parties'] interests become adverse, counsel is required to completely withdraw from the representation of each client."). Accordingly, a conflict of interest may preclude a lawyer from representing co-defendants. See Op. 552, 102 N.J. at 205; Kramer v. Ciba-Geigy Corp., 371 N.J. Super. 580, 602-05 (App. Div. 2004). Further, we have explained that, consistent with Rule 1.7(a)(2), "joint representation of multiple parties whose interests are potentially diverse is permissible only if 'there is a substantial identity of interests between them in terms of defending the claims that have been brought against all defendants.'" Hill v. New Jersey Dep't of Corr., 342 N.J. Super. 273, 309 (App. Div. 2001) (quoting Op. 552, 102 N.J. at 204).

We conclude the trial court correctly found that, at this early stage of the litigation, plaintiffs presented insufficient evidence to sustain their burden that there is a significant risk that potential conflicts exist or could arise in the future. Plaintiffs' arguments regarding a potential conflict under RPC 1.7(a)(1) or 1.7(a)(2) are, as the trial court cogently noted, "at this point . . . basically speculating."

Indeed, defendants have not yet filed an answer containing any cross-claims against Nurses Patel and Spooner. Further, Decotiis disputes plaintiffs'

interpretation of the report findings and that the nurses' interests are, or will be, adverse to NJTA's, and instead maintains all defendants will be aligned in defending plaintiffs' complaint. It further contends nothing in the investigation will hamper that defense because the findings from the investigatory report do not affect the alleged non-discriminatory workplace conflict that remained between plaintiffs and the nurses.

As noted, neither the report nor the follow-up letter which form the bases of plaintiffs' conflict of interest claims are included in the record before us. Without these documents, or a more fulsome development of the record, we are simply unable to conclude, like the court, whether the risk of a conflict is sufficient to warrant disqualification at this stage. As such, we find plaintiffs' reliance on Opinion 522 misplaced. The extent to which Opinion 552 mandates disqualification in suits between a public entity and its employees has limited relevance given the sparce record before us. Plaintiffs have also failed to provide any affidavits or certifications from competent witnesses, detailing with specificity how a material conflict has arisen from this arrangement between NJTA and the nurses, and thus failed to satisfy their burden. Hudson, 443 N.J. Super. at 282.

We also note, in light of our decision, we need not address plaintiffs' waiver arguments under RPC 1.7(b) and RPC 1.8. Specifically, we need not resolve the merits of plaintiffs' waiver arguments in light of our decisions that plaintiffs have failed, at this stage and on this record, to establish a disqualifying conflict.[3]

We next address, and reject, plaintiffs' argument that RPC 3.7 mandates disqualification. RPC 3.7(a) provides "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." RPC 3.7(b) further states, "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness . . . ."

"RPC 3.7 is a rule addressed only to a lawyer acting as an advocate at trial." Escobar v. Mazie, 460 N.J. Super. 520, 527 (App. Div. 2019). "As the burden of disqualification is on the movant, . . . it will be for plaintiff to establish that specific . . . lawyers will be necessary witnesses at trial." Id. at 529 (internal citations omitted). "The ABA annotated comments to RPC 3.7 instruct '[a]

_____

[3] After the notice of appeal was filed, we note Nurses Patel and Spooner provided two certifications that both state they "consent to DeCotiis'[] continued representation in connection with this lawsuit" and noting that they "have been fully apprised of the planned defense strategy." As noted, we need not address the validity of these waivers, which were not before the trial court, because of the lack of record evidence demonstrating a disqualifying conflict at this juncture.

"necessary" witness under [RPC] 3.7 is one whose testimony is unobtainable elsewhere.'" Escobar, 460 N.J. Super. at 528 (first alteration in original) (quoting Annotated Model Rules of Prof'l Conduct R. 3.7 (2019)); see also State v. Tanksley, 245 N.J. Super. 390, 393-94 (App. Div. 1991) (determining defense counsel who witnessed a client's statement alongside the client's mother was not a necessary witness because the client "emphatically" testified to the truth of the facts within the statement, and no dispute existed regarding the statement's completeness or accuracy).

Beyond identifying DeCotiis as the firm who prepared the internal investigation on behalf of NJTA, plaintiffs have not produced any evidence that the individual attorneys who undertook the investigation are defendants' designated trial counsel as required per RPC 3.7(a). In fact, Decotiis has represented that they will not be involved in the trial proceeding. In any event, RPC 3.7 "does not have an imputed disqualification provision" where another lawyer in a lawyer's firm is likely to be called as a witness. Escobar, 460 N.J. Super. at 529 (citing RPC 3.7(b)); see also State v. Irizarry, 271 N.J. Super. 577, 593-601 (App. Div. 1994) (deciding against disqualifying an entire prosecutor's office under RPC 3.7 where one assistant prosecutor likely to be a necessary witness at trial). Again, plaintiffs simply have not carried the burden for

disqualification, and we accordingly conclude DeCotiis is not disqualified, at this stage, from its representation of defendants merely because, according to plaintiffs, its attorneys could be a witness at trial. Escobar, 460 N.J. Super. at 527.

As is clear, the primary animating basis for our opinion is the lack of evidence in the record supporting plaintiffs' arguments when considered against their burden of proof on the disqualification issues. Nothing in our opinion should be interpreted as reflecting our final views on the issues raised, and in that regard, nothing prevents the parties on remand from further prosecuting the issue, including engaging in relevant discovery, or from requesting an evidentiary hearing to address the potential conflicts that may arise as proceedings continue. See G.S., 447 N.J. Super. at 580; see also Dewey, 109 N.J. at 222.

Affirmed. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1805-24