983 A.2d 1097

IN THE MATTER OF THE STATE GRAND
JURY INVESTIGATION.

Argued September 14, 2009—Decided November 23, 2009.

484

*Frank Muroski,* Deputy Attorney General, argued the cause for appellant State of New Jersey (*Anne Milgram,* Attorney General, attorney).

*Lawrence S. Lustberg,* argued the cause for respondents Jack Arseneault, Esq., Jerome J. Convery, Esq., Timothy M. Donohue, Esq., and John P. McDonald, Esq. (*Gibbons,* attorneys; *Mr. Lustberg* and *Jennifer Mara,* on the briefs).

*Richard A. Rafanello,* argued the cause for respondent Laidlaw Transit Services, Inc. (*Shain, Schaffer & Rafanello,* attorneys; *Mr. Rafanello, Marguerite M. Schaffer,* and *Gregory B. Pasquale,* attorneys, on the briefs).

*Nicholas C. Harbist,* argued the cause for *amicus curiae* The Association of Criminal Defense Lawyers of New Jersey (*Blank Rome,* attorneys; *Mr. Harbist, James T. Strawley,* and *Inez R. McGowan,* attorneys, on the brief).

Justice RIVERA–SOTO delivered the opinion of the Court.

Confronted with a grand jury inquiry that commanded the testimony of several of its employees, an employer elected to provide and pay for counsel to those employees for purposes of that investigation. Fearing that having individual employees/grand jury witnesses represented by counsel retained and compensated by the putative target of the grand jury inquiry violated several of the *Rules of Professional Conduct,* the State moved to disqualify those counsel. The trial court denied that application, limited the amount of information to be transmitted by such counsel to the employer, and, further, imposed restrictions both on the ability of the employer to discontinue paying the fees of counsel for the employees as well as on the ability of those counsel to discontinue representing the subpoenaed employees.

Regardless of the setting—whether administrative, criminal or civil, either as part of an investigation, during grand jury proceedings, or before, during and after trial—whether an attorney may be compensated for his services by someone other than his client is governed in large measure by *RPC* 1.8(f) and, to a lesser extent, *RPC* 1.7(a) and *RPC* 5.4(c). The overarching *Rule,* which purposely is written in the negative, forbids a lawyer from "accept[ing] compensation for representing a client from one other than the client unless [three factors coalesce]: (1) the client gives informed consent; (2) there is no interference with the lawyer's independence of professional judgment or with the lawyer-client relationship; and (3) information relating to representation of a client is protected" as provided in the *RPCs. RPC* 1.8(f). A straightforward application of *RPCs* 1.7(a), 1.8(f) and 5.4(c) requires that we affirm the order of the trial court.

## I.

The operative facts on which this appeal arise are readily stated. The State commenced a grand jury investigation into whether a corporate contractor had submitted fraudulent invoices for services purportedly rendered to a county government. That inquiry focused primarily on the contractor and three of its employees. In response, the company arranged for counsel for its employees. The company entered into four separate retainer agreements with four separate lawyers, three of whom were assigned to represent, respectively, the three specific employees noted, and the fourth was retained to represent "all non-target current and former employees of [the company] . . . in connection with the current state grand jury investigation."

The retainer agreements with each of the four lawyers, however, shared common characteristics and were, in all substantive and material respects, indistinguishable. A typical retainer agreement provided (1) that the company "will be ultimately responsible to [the] law firm for all reasonable and necessary legal fees and expenses incurred in this matter[;]" (2) that the "undertaking by the [c]ompany is made with the express understanding that the sole professional obligation of [the] law firm will be to [the named employee;]" (3) that the "law firm is not required to disclose any legal strategy, theory, plan of action, or the like, to the [c]ompany;" (4) that "payment of legal fees by the [c]ompany to [the] law firm in no way depends upon any such disclosure[;]" (5) that "no professional relationship will arise between the [c]ompany and [the] law firm as a result of the rendering of legal services by [the law firm] or the payment of legal fees and expenses by the [c]ompany[;]" (6) that "the reimbursement of legal fees and expenses . . . is neither conditioned upon nor dependent upon [the] law firm's cooperation with the [c]ompany or any other party[;]" (7) that while "[d]etailed invoices will be provided to [the represented employee,] to preserve the attorney/client privilege, [only] summary invoices will be submitted to the [c]ompany[;]" and (8)

that the company would be responsible to pay those invoices "upon receipt."

Based on the company's retention of separate counsel for each of three employees identified by the State, the company wrote to each such employee, informing them that:

As you know, ... the New Jersey Attorney General's office served [the company] with a Grand Jury subpoena seeking various billing and payroll records related to [the company]'s contract with [the specified county government]. The company has been fully cooperative with the State's investigation.

Recently the Attorney General's office has begun interviewing some of our employees at the [identified] project. Given your position with the [c]ompany and involvement in this project, and based upon the advice of our attorneys in New Jersey, we believe it would be prudent to retain separate counsel to represent you personally in connection with the State's investigation. Accordingly, [the company] has retained [a specially retained lawyer] to represent you in connection with the State's investigation. You do not have to use [that specially retained lawyer] as your attorney. You are free to hire your own attorney, at your own costs. You should not interpret this decision to mean that [the company] believes there to have been any illegal activity in this matter on the part of any [company] employee. Rather, it is based upon the recognition that your personal rights may conflict with the interests of the company. While [the company] agrees to pay for your legal representation in this matter, please understand that it has no obligation to do so and may stop paying those legal fees and costs at any time, should it believe it appropriate to do so.

[Your specially retained lawyer] may be reached at [_____]. His firm address is: [_____].

Please expect [your specially retained lawyer] to contact you directly to arrange a convenient time to meet and discuss this matter. Please feel free to contact me directly or speak with [the company's local counsel] if you have any questions regarding this matter.

Very truly yours,

_____/s/_____

Senior Vice President and General Counsel

The company also announced to all other employees that the company had retained a lawyer—free of charge to the employees—with whom those employees could consult and who was available to represent those employees in respect of the grand jury inquiry.

In time, two of the four lawyers retained by the company to represent its employees were subpoenaed to appear before the

grand jury; they declined to appear, and the State later withdrew those subpoenas. The State then notified the company that it, along with several unnamed employees, had been designated as targets of the grand jury's investigation,[1] and later served grand jury subpoenas for the company's records in respect of the retention of counsel for its employees. The company complied with that subpoena by producing responsive but non-privileged documents.

The State moved before the Superior Court to disqualify the counsel retained by the company to represent its employees "from further participation in this matter, pursuant to RPC 1.7, RPC 1.8 and RPC 1.10[.]" In response, each of the employees to whom the company had provided counsel to date—the three identified "target" employees and two additional "non-target" employees—submitted certifications asserting that none of them could afford to retain separate counsel, and that each was satisfied with and wished to remain with their then counsel.

---

[1] In general, New Jersey adheres to the "target doctrine," which provides that "a 'target' of a grand jury proceeding must be advised that he is a target and of his right not to incriminate himself, failing which an indictment based on his testimony will be quashed ... [a] principle [that] grows out of the privilege against self-incrimination[.]" *State v. Vinegra*, 73 *N.J.* 484, 488, 376 *A.2d* 150 (1977) (citations omitted). For that reason, this State distinguishes between "targets," that is, those in respect of whom a grand jury investigation is aimed, and "non-targets" of grand jury inquiries. *State v. Fary*, 19 *N.J.* 431, 438–39, 117 *A.2d* 499 (1955); *State v. Korkowski*, 312 *N.J.Super.* 429, 438, 712 *A.2d* 210 (App.Div.1998) (remanding case "for an evidentiary hearing to determine if defendant was a target of the grand jury investigation"). The Legislature has recognized that distinction: unindicted "targets" of a grand jury investigation may "request ... a statement indicating that a charge against the person was investigated and that the grand jury did not return an indictment from the evidence presented[,]" *N.J.S.A.* 2B:21–9(a), while non-targets—those statutorily defined as "[a] person who has been called to appear before a grand jury for a purpose other than the investigation of a charge against the person"—are entitled to "request the grand jury to issue a statement indicating that the person was called only as a witness in an investigation, and that the investigation did not involve a charge against the person." *N.J.S.A.* 2B:21–9(b).

The trial court noted at the outset that it "view[ed the company's] conduct as one that is certainly to be appreciated." Addressing the caliber of the lawyers retained by the company for its employees, the trial court explained that "[a]s a major corporation, [the company] didn't go out and hire some ... low-level attorney. They went out and hired competent, knowledgeable, respected attorneys[.]" Focusing on the application of the *Rules of Professional Conduct* to the State's motion for disqualification, the court first observed that *RPC* 1.5 "talk[s] about fees being reasonable [and t]hat is not an issue [before] the Court." Moving on to the application of *RPC* 1.6, which addresses the confidentiality of information between a lawyer and his client, the trial court remarked that the retained lawyers had provided certifications and sample redacted bills. Agreeing that the procedure employed was proper, the trial court emphasized that "[t]he only thing that I would require going forward [is] that all of the bills [sent] to [the company] be redacted and that no specific information be detailed in the billing."

Turning to *RPC* 1.7, the general conflict of interest rule, the trial court concluded that, "at least at this point, there's been no demonstration that there is even a conflict [and] even if there were, these employees have the right to waive that conflict." It also declared itself "satisfied that there has been informed consent given by all [of] the employees by way of what they have put in the certifications." It concluded that

"the Court finds nothing improper about the attorneys that have been retained by [the company.] In fact, the Court would go further and say that [the company] acted responsibly, quite frankly, and with corporate policy and, quite frankly, having been advised of the reputation of these attorneys. And clearly the understanding between the [company] and these attorneys [was] spelled out in not only the retainer agreements, but [in] previous letters before all this was signed."

It added, however, some restrictions: "that [the company] and the individual attorneys, prior to ending any relationship for payment, would have to make application to the Court[,]" and that counsel were to "redact the billing[s] to cure any notion that the State may have that somehow the billing[s] will reveal significant aspects of [the grand jury] investigation."

The trial court entered an order that denied the State's motion to disqualify counsel.  More specifically, it

> FURTHER ORDERED that before [the company] may cease paying any of the attorney's legal fees and costs, [the company] shall provide notice to the Court and all parties, and the Court shall conduct a hearing on the issue of whether [the company] may cease paying such legal fees and costs; and
>
> IT IS FURTHER ORDERED that before any of the attorneys may withdraw from this case based upon the refusal of [the company] to pay the attorney's legal fees and costs, such attorney shall provide notice to the Court and all parties, and the Court shall conduct a hearing on the issue of the attorney's request to withdraw; and
>
> IT IS FURTHER ORDERED that the attorneys henceforth shall submit to [the company] legal bills either in summary form or with all detailed information redacted therefrom.

The State sought leave to appeal that determination and, in an unpublished order, the Appellate Division denied that application. It then moved before this Court, seeking leave to appeal the trial court's order and other ancillary relief.[2]  Those motions were granted.  *In the Matter of the State Grand Jury Investigation,* 198 *N.J.* 306, 966 *A.*2d 1074 (2009).  We also granted leave to the Association of Criminal Defense Lawyers of New Jersey (ACDL–NJ) to appear as amicus curiae.  For the reasons that follow, we affirm the order of the trial court.

## II.

According to the State, a per se conflict of interest arises whenever, as here, two facts contemporaneously appear: a target in a grand jury investigation unilaterally selects and retains a lawyer to represent potential witnesses against it, *and* the lawyer relies on the target for payment of legal fees.  In the State's view, that arrangement will split the attorney's loyalty and will discourage the lawyer from counseling the client to cooperate with the State, even when cooperation might be in the client's best interest. It asserts that the perceived effect of allowing a target to select

---

[2] The State also sought additional time within which to file its brief in support of its motion for leave to appeal, as well as leave to expand the record.

and pay for counsel for the witnesses against it is to irreparably taint the proceedings. The State also claims that such a conflict cannot be waived and that, even if it could be waived, a waiver could only be demonstrated through the live testimony of the witnesses, and not, as was done here, via certifications.

The lawyers whose disqualification is sought counter that *RPC* 1.8(f) clearly contemplates an employer designated as a grand jury "target" providing and paying for separate counsel for its employees during that grand jury inquiry. They reject the State's claim that, in the criminal law setting, the better rule is the imposition of a per se conflict. Finally, they assert that, even if a potential conflict of interest exists, it has been effectively waived. Amicus ACDL–NJ repeats those arguments.

The company echoes the arguments advanced both by the lawyers whose disqualification is sought and by amicus, and further asserts that, under the laws of its place of incorporation, it has an obligation to provide counsel to its employees, noting that, absent counsel provided by and paid for by the company, most of its employees would be unable to afford a lawyer.

### III.

### A.

"Our evaluation of an actual or apparent conflict . . . does not take place in a vacuum, but is, instead, highly fact specific." *State v. Harvey,* 176 *N.J.* 522, 529, 826 *A.*2d 597 (2003) (citations and internal quotation marks omitted). "In that respect, the Court's attention is directed to something more than a fanciful possibility." *Ibid.* (citation and internal quotation marks omitted). "To warrant disqualification in this setting, the asserted conflict must have some reasonable basis." *Ibid.* (citation and internal quotation marks omitted).

The State asserts that a target of a grand jury inquiry providing and paying for the lawyers who will represent the target's employees before the very grand jury considering the target's culpability

creates an insoluble conflict not subject to waiver. Although the State's arguments possess considerable initial appeal, in light of modern changes in the manner in which attorney-client relationships are to be viewed, we are constrained to disagree.

No doubt, it long has been the law of this State that it is "improper for [the attorney for an employee] to have accepted the organization's promise to pay his bill, for such an arrangement has the inherent risk of dividing an attorney's loyalty between [his client] and [his client's] employer who will pay for the services." *In re Abrams*, 56 *N.J.* 271, 275, 266 *A.2d* 275 (1970). In those instances, we have concluded that "[a] conflict of interest inheres in every such situation[,]" one that cannot be waived "when the subject matter is crime and when the public interest in the disclosure of criminal activities might thereby be hindered." *Id.* at 276, 266 *A.2d* 275. Reasoning that "[a]n attorney must realize that the employer who agrees to pay him is motivated by the expectation that he will be protected[,]" *ibid.*, we have concluded that

[i]t is inherently wrong to represent both the employer and the employee if the employee's interest may, and the public interest will, be advanced by the employee's disclosure of his employer's criminal conduct. For the same reasons, it is also inherently wrong for an attorney who represents only the employee to accept a promise to pay from one whose criminal liability may turn on the employee's testimony.

[*Ibid.*]

*See also Wood v. Georgia*, 450 *U.S.* 261, 268–69, 101 *S.Ct.* 1097, 1102, 67 *L.Ed.2d* 220, 228–29 (1981) (emphasizing that "[c]ourts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest" (footnotes omitted)); *State v. Norman*, 151 *N.J.* 5, 34, 697 *A.2d* 511 (1997) (citing *Abrams, supra,* and *Wood, supra*).

## B.

That said, effective September 10, 1984, New Jersey replaced its then extant *Canons of Professional Ethics* and *Disciplinary Rules* with the more modern *Rules of Professional Conduct.* Among these was *RPC* 1.8(f), which then provided that

> [a] lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client consents after consultation; (2) there is no interference with the lawyer's independence of professional judgment or with the lawyer-client relationship and (3) information relating to representation of a client is protected as required by *RPC* 1.6.

Thereafter, starting in 2001 and continuing for almost two years, New Jersey engaged in a "review [of] the existing Rules of Professional Conduct in light of the work of the American Bar Association's Commission on Evaluation of the Rules of Professional Conduct (the 'Ethics 2000 Commission')." Supreme Court of New Jersey, *Administrative Determinations in Response to the Report and Recommendation of the Supreme Court Commission on the Rules of Professional Conduct,* September 10, 2003. This process culminated in yet another round of modifications to the *Rules of Professional Conduct.* In respect of *RPC* 1.8(f), however, only minor changes were made;[3] it now provides in full as follows:

> A lawyer shall not accept compensation for representing a client from one other than the client unless:
>
> (1) the client gives informed consent;
>
> (2) there is no interference with the lawyer's independence of professional judgment or with the lawyer-client relationship; and
>
> (3) information relating to representation of a client is protected as required by *RPC* 1.6.

---

[3] Only two changes were made to *RPC* 1.8(f) in 2003, one substantive and one only as to form. The substantive change appears in *RPC* 1.8(f)(1), which previously read "the client consents after consultation" and now reads "the client gives informed consent." As a matter of form, *RPC* 1.8(f) originally appeared as a single, continuous paragraph; in 2003, its appearance was changed slightly so that each numbered subsection was indented separately.

## C.

However, *RPC* 1.8(f) does not exist in a vacuum: two other *RPCs* directly touch on the question presented. First, *RPC* 1.7(a) forbids a lawyer from representing a client "if the representation involves a concurrent conflict of interest." That *RPC* recognizes "[a] concurrent conflict of interest ... if: ... there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to ... a third person or by a personal interest of the lawyer." *RPC* 1.7(a)(2). Second, *RPC* 5.4(c) provides that "[a] lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."

Our task, then, is to harmonize RPC's 1.7(a)(2), 1.8(f) and 5.4(c) seemingly overlapping mandates so as to give proper guidance on whether, and under what circumstances, a lawyer may represent a client when the fees and costs incurred are being paid by another.

## D.

The starting point for analysis must be the *RPC* that most specifically addresses the question of when a lawyer can represent a client while being paid by another: *RPC* 1.8(f).[4] That *RPC*

---

[4] Although we have sanctioned lawyers for violating *RPC* 1.8(f), *see In re Weiner*, 188 *N.J.* 341, 907 *A.2d* 1004 (2006) (disbarring lawyer for, among other claims, accepting compensation from third party without protecting client in violation of *RPC* 1.8(f)); *In re Kalman*, 177 *N.J.* 608, 832 *A.2d* 913 (2003) (prohibiting out-of-state lawyer from appearing pro hac vice in New Jersey courts for, among other claims, accepting compensation from one other than the client absent client consent, in violation of *RPC* 1.8(f); *In re Malat*, 177 *N.J.* 506, 830 *A.2d* 499 (2003) (suspending lawyer for, among other things, accepting compensation from someone other than a client, in violation of *RPC* 1.8(f)); *In re Moeller*, 177 *N.J.* 511, 512, 830 *A.2d* 911 (2003) (suspending lawyer for accepting compensation from someone other than the client, in violation of *RPC* 1.8(f)); In *re Kiegel*, 174 *N.J.* 299, 804 *A.2d* 1169 (2002) (admonishing lawyer for improperly accepting of fee from third party, in violation of *RPC* 1.8(f)), and we have referred to that *Rule* when cited by our Advisory Committee on Professional Ethics, *see In re Opinion 682 of the Advisory Comm. on Prof'l Ethics*, 147 *N.J.*

makes clear that three factors must coalesce in order to allow a lawyer paid by a third party to represent a client: the client must give informed consent; the lawyer's independent professional judgment and the lawyer-client relationship must be maintained sacrosanct; and no improper disclosures relating or referring to the representation can be made. However, the considerations that animate *RPC* 1.7(a)(2)—that there be no concurrent conflict of interest—and *RPC* 5.4(c)—that no third party may influence the lawyer's professional judgment—also are relevant and must be addressed.

A synthesis of *RPCs* 1.7(a)(2), 1.8(f) and 5.4(c) yields a salutary, yet practical principle: a lawyer may represent a client but accept payment, directly or indirectly, from a third party provided each of the six conditions is satisfied. Those conditions are:

(1) The informed consent of the client is secured. In this regard, " '[i]nformed consent' is defined as the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." *Tax Auth., Inc. v. Jackson Hewitt, Inc.,* 187 *N.J.* 4, 19 n. 2, 898 *A.*2d 512 (2006) (citation and internal quotation marks omitted).

(2) The third-party payer is prohibited from, in any way, directing, regulating or interfering with the lawyer's professional judgment in representing his client. *RPC* 1.8(f)(2); *RPC* 5.4(c). *See, e.g., In re Opinion 682 of the Advisory Comm. on Prof'l Ethics,* 147 *N.J.* 360, 687 *A.*2d 1000 (1997) (holding, in part, that formation

---

360, 364-65, 687 A.2d 1000 (1997), this Court has not had the opportunity to squarely address how *RPC* 1.8(f) is to operate or how it is to be interpreted. Our research discloses that, nationally, the precedents are equally sparse. *See, e.g., In re Ray,* 314 B.R. 643, 655 (Bankr.M.D.Tenn.2004) (quoting *RPC* 1.8(f) without discussion); *Johnson v. Cont'l Cas. Co.,* 57 *Wash.App.* 359, 788 P.2d 598, 600 (1990) (citing *RPC* 1.8(f) as reference).

of title insurance company owned and managed by attorneys who would retain portion of premiums paid by client as part of fee calls into question lawyer's independent judgment).

(3) There cannot be any current attorney-client relationship between the lawyer and the third-party payer.[5] *In re Garber,* 95 *N.J.* 597, 607, 472 *A.2d* 566 (1984) ("It is patently unethical for a lawyer in a legal proceeding to represent an individual whose interests are adverse to another party whom the lawyer represents in other matters, even if the two representations are not related." (citations omitted)); *see also RPC* 1.7 (general rule governing conflicts of interest).

(4) The lawyer is prohibited from communicating with the third-party payer concerning the substance of the representation of his client. *RPC* 1.8(f)(3). The breadth of this prohibition includes, but is not limited to, the careful and conscientious redaction of all detail from any billings submitted to the third-party payer.

(5) The third-party payer shall process and pay all such invoices within the regular course of its business, consistent with manner, speed and frequency it pays its own counsel.

(6) Once a third-party payer commits to pay for the representation of another, the third-party payer shall not be relieved of its continuing obligations to pay without leave of court brought on prior written notice to the lawyer and the client. In such an application, the third-party payer shall bear the burden of proving that its obligation to continue to pay for the representation should cease; the fact that the lawyer and the client have

---

[5] Of course, all other *Rules of Professional Conduct* governing conflicts of interest must be observed. *See, e.g., RPC* 1.7 (stating general conflict of interest rule); *RPC* 1.8 (addressing conflict of interest with current clients and special circumstances); *RPC* 1.9 (addressing conflicts of interest in respect of former clients); *RPC* 1.10 (governing imputation of conflicts of interest); *RPC* 1.11 (addressing conflicts arising from successive government and private employment); *RPC* 1.12 (addressing judicial and quasi-judicial conflicts); *RPC* 1.13 (addressing conflicts arising out of organizational clients).

elected to pursue a course of conduct deemed in the client's best interests but disadvantageous to the third-party payer shall not be sufficient reason to discontinue the third-party payer's continuing obligation of payment. If a third-party payer fails to pay an employee's legal fees and expenses when due, the employee shall have the right, via a summary action, for an order to show cause why the third-party payer should not be ordered to pay those fees and expenses.

## E.

■ We now apply this principle, and its conditions, to the case on appeal.

■ *Informed consent.* Each of the letters from the company to the individual employees provided that the employee "d[id] not have to use [the assigned counsel] as your attorney. You are free to hire your own attorney, at your own costs." As conceded by counsel for the company during oral argument, that "take-it-or-leave-it" approach, on its face, does not satisfy the requirement that the employee's acceptance of counsel be based on informed consent. Therefore, presumptively, the retention of counsel here does not comply with *RPC* 1.8(f)(1). However, as acknowledged by the trial court, each of the employees certified that he was satisfied with the assigned counsel and wished to remain as that counsel's client. Therefore, we conclude that the arrangement approved by the trial court below is satisfactory, albeit with the caveat that, in the future, no such limitations on the choice of counsel should be communicated or imposed on the employee/client save for reasonable limitations on fees and expenses.

■ *Interference with the lawyer's professional judgment.* As clearly set forth in the separate retention letters between the lawyers and the company, each of the lawyers explained that "the sole professional obligation of [the] law firm will be to [the assigned client]." For the avoidance of future doubt, such retention letters should clearly and conspicuously note that nothing in

the representation shall limit the lawyer's responsibilities to the client, as provided in *RPC* 1.8(f)(2), and that the third-party payer shall not, in any way, seek to "direct or regulate the lawyer's professional judgment in rendering such legal services." *RPC* 5.4(c).

■ *Current representation.* The record is clear that none of the lawyers selected to represent the individual employees had any current relationship with the company, and that "no professional relationship will arise between the [c]ompany and [the] law firm as a result of the rendering of legal services by [the assigned lawyer] or the payment of legal fees and expenses by the [c]ompany." Those facts, standing alone, constitute a sufficient showing in favor of permitting this representation. Again, as an aid in future matters, the retention letters should clearly spell out that the lawyer does not have a professional relationship with the third-party payer.

*Prohibited communications.* Each of the retention letters made clear that the lawyer "is not required to disclose any legal strategy, theory, plan of action, or the like, to the [c]ompany and payment of legal fees by the [c]ompany to [the] law firm in no way depends upon any such disclosure." In this respect, the better practice is to affirmatively state that the lawyer will not disclose any part of the substance of the representation of the client to the third-party payer. Consistent with that representation, all billings from the lawyer to the third-party payer must have any detail information redacted, simply stating the sum due for services rendered and the sum due for expenses incurred. Because these latter conditions were imposed by the trial court, the retention letters, as modified by the trial court, clearly comply with the requirements we have imposed.

■ *Prompt and continued payment.* Once an employer commits to paying the legal fees and expenses of its employees, it scrupulously must honor that commitment. Also, if the employer wishes to discontinue paying the legal fees and expenses of one or more of its employees, it may only do so by leave of court granted.

Because this condition also was imposed by the trial court and was agreed to by all parties, the arrangements at issue are satisfactory.

In sum, through the combined product of the good faith of an employer, the diligence of competent counsel and the exercise of a trial court's supervisory authority, the net result of the company's retention and payment of counsel for its employees complies with the *Rules of Professional Conduct.* For these reasons, the trial court properly denied the State's motion to disqualify counsel.

## IV.

The order of the Law Division denying the State's motion to disqualify the counsel retained to represent the company's employees before the grand jury is affirmed.

*For affirmance*—Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.