**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1719

_____

MAXLITE, INC., formerly known as SK AMERICA, INC.
doing business as MAXLITE

v.

ATG ELECTRONICS, INC.; JAMES D. STEEDLY;
SOPHIA C. GALLEHER; MATTHEW KIM

Sophia C. Galleher, Matthew Kim,

Appellants

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-15-cv-01116)
District Judge:  Honorable John M. Vazquez

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 8, 2024

Before: SHWARTZ, CHUNG, and AMBRO, <u>Circuit Judges</u>


(Opinion filed: April 9, 2024)

---

OPINION[*]

---

AMBRO, Circuit Judge

ATG Electronics, Inc. ("ATG") hired several employees from its competitor MaxLite, Inc. ("MaxLite"), which later sued ATG and the employees under the non-compete and non-solicitation provisions in the employees' contracts with MaxLite. ATG entered into a joint-representation agreement with the employees and agreed to cover their legal fees, yet it later fired them and ceased paying those fees. The employees cross-claimed against ATG seeking to compel it to continue paying their legal fees as a third-party payer, but the United States District Court for the District of New Jersey dismissed their crossclaim. They now appeal and seek to certify questions related to the interpretation of *In re State Grand Jury Investigation,* 983 A.2d 1097 (N.J. 2009), which sets out six requirements for third-party payer agreements under the New Jersey Rules of Professional Conduct. Because it is clear no valid third-party payer agreement existed between the parties, we decline to certify to the New Jersey Supreme Court the employees' questions regarding *Grand Jury* and affirm the District Court's dismissal of their crossclaim.

I.       BACKGROUND

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ATG is a California corporation in direct competition with New Jersey corporation MaxLite. As of 2014, MaxLite employed Sophia C. Galleher and Matthew Kim[1] with contracts containing non-compete and non-solicitation provisions as well as New Jersey choice-of-law and venue provisions.

Despite concerns about the non-compete provision in her contract, Galleher resigned from MaxLite in October 2014 to work for ATG. Kim did the same in December. Both employees did so after ATG's founder and president, Yaxis Ni, solicited their employment, claiming he had the non-compete provision reviewed by an attorney who assured him it would not be an issue. Ni further promised them that if MaxLite did sue, ATG would provide full legal protection and cover any legal fees.

In February 2015, the employees received cease-and-desist letters from MaxLite demanding that they terminate their positions with ATG within three days pursuant to the non-compete provisions in their employment agreements. In response, Ni retained attorney James Mulcahy to represent ATG and the employees, who entered into a joint representation agreement. In the process of hiring Mulcahy, Ni reiterated that ATG would cover any legal fees and costs. All parties signed an engagement letter and a conflict waiver, and ATG paid the retainer fee of Mulcahy. His initial strategy was to file a preemptive action for declaratory relief in California. Before he could do so, however,

---

[1] A third employee, James Steedly, was a defendant in the underlying case until he stopped communicating with counsel in June 2018. The trial court granted his counsel's motion to withdraw on September 19, 2018, and default was entered against Steedly on July 10, 2019. Any further reference to employees is only to Galleher and Kim.

3

MaxLite filed a complaint against the employees and ATG asserting violations of the non-compete and non-solicitation provisions of their employment agreements.[2]   Mulcahy addressed all bills exclusively to ATG, which paid him over $90,000.

Later that year, however, Ni expressed certain problems with paying.  In June, he indicated to Mulcahy that he needed more time to pay the outstanding bills and said he would pay ATG's amounts before paying the bills for the employees.  Around the same time, he explained to Gallaher that ATG was seeking financing for a new building and needed to show as high a balance as possible but reiterated that ATG would cover her legal bills.  Ni told Mulcahy he was concerned that even if ATG were dismissed from the MaxLite litigation, the corporation would still have to pay the bills of the employees.  Ni asked if he could avoid paying the employees' bills by firing them, and Mulcahy responded that, if Ni did so, a conflict of interest would emerge between ATG and the employees and he would have to withdraw from the case.

After consulting with another attorney, Ni fired the employees, believing this would help the case settle more quickly.  He indicated he would pay the outstanding attorney fees to Mulcahy, but no future litigation costs.  As he had indicated he would do, Mulcahy moved to withdraw as counsel.  The employees then retained Pashman Stein

---

[2] MaxLite's amended complaint alleged eight counts: (I) breach of contract against the employees; (II) breach of implied covenant of good faith and fair dealing against the employees; (III) conversion and misappropriation against the employees; (IV) unfair competition/breach of duty of loyalty against the employees; (V) tortious interference with contractual relations against all defendants; (VI) tortious interference with current and perspective business advantage against all defendants; (VII) civil conspiracy against all defendants; and (VIII) unjust enrichment against ATG.  See Dist. Ct. Dkt. 76 at 42-45.

Walder Hayden P.C. ("Pashman Stein") to represent them. The current issue then emerged of who would pay for the employees' litigation costs going forward.

This issue first came before the United States District Court for the District of New Jersey in September 2015, when the employees, through an order to show cause, requested (1) leave to file a crossclaim seeking a declaratory judgement that ATG was responsible for all their past and future legal fees incurred in connection with the litigation and (2) the entry of a preliminary injunction compelling ATG to continue payment of their legal fees and costs until relieved of its obligation by the Court.

The employees' argument for why ATG was responsible for their legal fees was based on the New Jersey Supreme Court decision in *Grand Jury*. That case concerned employees called to testify against their employer, who was paying their legal fees, in a grand jury investigation relating to alleged fraud. The State moved to disqualify the employees' counsel. *Id.* at 1099. In holding that the employer could pay their legal fees without creating an impermissible conflict, *Grand Jury* outlined six requirements for third-party payer agreements under the New Jersey Rules of Professional Conduct. *Id.* at 1105. The sixth of these conditions is that "[o]nce a third-party payer commits to pay for the representation of another, the third-party payer shall not be relieved of its continuing obligations to pay without leave of court brought on prior written notice to the lawyer and the client." *Id.* at 1106. *Grand Jury* further stated that "[i]f a third-party payer fails to pay an employee's legal fees and expenses when due, the employee shall have the right, via a summary action, for an order to show cause why the third-party payer should not be ordered to pay those fees and expenses." *Id.* at 1106. The employees contended that

5

ATG, by ceasing to pay their legal fees, was in violation of this sixth condition, and that they are thus entitled to payment under the right that *Grand Jury* discussed.

In March 2018, Magistrate Judge James B. Clark issued a Report & Recommendation ("R&R") denying the employees' application for a preliminary injunction, finding that they had failed to make the requisite showing of irreparable harm. However, the Magistrate did grant them leave to file their crossclaim seeking declaratory judgment against ATG. The District Court adopted this R&R in its entirety. Accordingly, the employees filed an amended answer and crossclaim. In June 2018, the employees moved for summary judgment on their crossclaim; District Judge John M. Vazquez denied that motion, finding there existed genuine issues of material fact on whether ATG committed to paying their legal fees.

Judge Vazquez conducted a bench trial on the employees' crossclaim in August and September 2022. Following the trial, he held that ATG was "not responsible for [the employees'] legal fees as a third-party payer pursuant to *In re State Grand Jury Investigation*," but the employees were "granted leave to file a motion to amend their crossclaim to assert appropriate contract[] or quasi-contract claims." App. at 37. Judge Vasquez ruled that although the employees had detrimentally relied on promises of ATG to pay for the costs of litigation, it was not responsible for their legal fees as a third-party payer because Mulcahy's joint representation of the parties had violated the factors enumerated in *Grand Jury* such that no valid third-party payer agreement existed.

In January 2023, the employees moved for interlocutory appeal. The District Court denied this request, holding that they "ha[d] not demonstrated that the Court's

6

December 21 [d]ecision 'involve[d] a controlling question of law as to which there [wa]s substantial ground for difference of opinion.'" Order at 3, *MaxLite, Inc.*, No. 15-1116 (D.N.J. Feb. 17, 2023), Dist. Ct. Dkt., ECF No. 509 (quoting 8 U.S.C. § 1292(b)). It also stated that "[t]he [employees] ha[d] not provided any authority, whether binding or persuasive, which support[ed] their expansive reading of [*Grand Jury*]."[3] *Id.* This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review factual findings for clear error, *United States v. Doe.*, 810 F.3d 132, 142 (3d Cir. 2015), and take a fresh look at "the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Burns v. PA Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011) (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir. 1981)).

## III. DISCUSSION

The employees raise three arguments on appeal. None is persuasive.

First, the employees ask us to certify two questions about *Grand Jury* to the New Jersey Supreme Court. Specifically, they ask us to certify: (a) whether the "protections" offered by the New Jersey Supreme Court in *Grand Jury* apply when a client and the

---

[3] The employees simultaneously made a motion to amend their crossclaim but subsequently withdrew that motion to amend, and the crossclaim was dismissed with prejudice.

7

purported third-party payer are jointly represented by counsel, assuming appropriate waivers of conflict are signed by all parties; and (b) whether *Grand Jury* extends to substitute counsel retained by the client after the initial attorney has withdrawn due to a conflict created by the purported third-party payer. Opening Br. 22.

As a preliminary matter, we echo the District Court's confusion as to why the employees seek relief under *Grand Jury* as well as its assessment that a claim sounding in breach of contract or quasi-contract would be a more appropriate route for relief. *Grand Jury* did not concern a client seeking to compel a third-party payer to continue paying its counsel. Instead, it considered the State's motion to disqualify employee witnesses' counsel on the ground that, because the employer being investigated was paying the employees' legal fees, the arrangement violated the New Jersey Rules of Professional Conduct. In holding that the lawyer could continue to represent the employees, the Court set out six requirements for third-party payer arrangements. All of the requirements were meant to ensure that the third-party payer does not influence the course of the litigation or breach the confidentiality of the attorney-client relationship. The employees in our case attempt to portray the sixth of these conditions—to repeat, "[o]nce a third-party payer commits to pay for the representation of another, the third-party payer shall not be relieved of [its] continuing obligations to pay without leave of court brought on prior written notice to the lawyer and the client"—as creating a form of relief that would compel ATG to pay its legal fees. *Grand Jury*, 983 A.2d at 1106. It is correct that, as part of its concern about third parties influencing the attorney-client relationship by either making or withholding payment, *Grand Jury* noted that if the third party breaches a

8

payment agreement, the client should be able to seek to enforce the agreement by "summary action." *Id.* at 1106. But in doing so, the Court's focus was not on protecting clients whose legal fees were going unpaid; it was on ensuring the New Jersey Rules of Professional Conduct were upheld by counsel by preventing third-party payers from, for example, leveraging non-payment to pursue their own interests.

That said, to the extent the employees' questions about *Grand Jury* are relevant to their claim, we still need not certify them because the New Jersey Supreme Court already answered them. In determining whether to certify an issue, we consider: (i) whether the relevant question's eventual resolution is unclear and controls an issue in the case; (ii) the importance of the question, or the State's interest in the interpretation of its own law; and (iii) judicial economy. *United States v. Defreitas*, 29 F.4th 135, 141-42 (3d Cir. 2022). "Certifying a question where the answer is clear is inappropriate and unnecessary." *Id.* at 141 (citing *City of Houston, Tex. v. Hill*, 482 U.S. 451, 470-71 (1987)). Under the holding in *Grand Jury*, a joint representation agreement like that between ATG and the employees is clearly not a valid third-party payer agreement; a lawyer may represent a client, but accept payment from a third party, only when "each" of six conjunctive conditions are satisfied—not only some of them. *Grand Jury,* 983 A.2d at 1105. Three of those conditions—that the third-party payer cannot direct, regulate, or interfere with a lawyer's professional judgment; that there cannot be any current attorney-client relationship between the lawyer and the payer; and that the lawyer may not communicate with the payer regarding the substance of the representation—are not met here. Because the answers to the employees' questions are clear, we need not certify them.

9

With this in mind, the answer to the employees' second argument is also clear: the District Court correctly held that the parties' arrangement was not a valid third-party payer agreement because it violated several of the conditions set out in *Grand Jury*. First, "[t]here cannot be any current attorney-client relationship between the lawyer and the third-party payer," but Mulcahy represented ATG at the same time he represented the employees. *Id.* at 1106. Second, the lawyer cannot communicate regarding the substance of the representation with the third-party payer, whereas Mulcahy constantly communicated with ATG regarding the representation. Finally, the third-party payer cannot direct, regulate, or interfere with the lawyer's professional judgment, whereas ATG no doubt directed Mulcahy as its lawyer. Because a valid third-party payer arrangement under *Grand Jury* never existed in this case, the employees cannot rely on one to compel ATG to continue paying their legal fees.

Finally, the employees assert that the District Court erred in concluding that even if *Grand Jury* applied, it would not permit recovery of fees incurred by Pashman Stein. They contend that such a holding allows third parties to relieve themselves from the duty of payment not by court order but by deliberately forcing counsel to withdraw by creating a conflict, as ATG did when it fired the employees. Because the parties never had a valid agreement under *Grand Jury*, we need not reach this question. In the interest of completion, however, we point out that the conflict of interest that forced the change of counsel emerged only because of ATG and the employees' joint representation by Mulcahy, the very reason they never had a valid third-party payer agreement. Further, in *Grand Jury* the third-party payer had retainer agreements with all the attorneys it agreed

10

to compensate. *Id.* at 1099. In contrast, ATG never had a retainer agreement with Pashman Stein to represent the employees. Therefore, even under alternative circumstances where ATG and the employees initially had a valid third-party payer agreement, compelling ATG to pay for the fees of a law firm it had never retained would extend *Grand Jury* further than the New Jersey Supreme Court contemplated.

*      *      *      *      *

We thus affirm the District Court's decision and deny Appellants' motion to certify.