IN THE MATTER OF THE PETITION FOR REVIEW OF
OPINION 552 OF THE ADVISORY COMMITTEE ON
PROFESSIONAL ETHICS.

Argued November 19, 1985—Decided April 9, 1986.

*Michael R. Clancy,* Deputy Attorney General, argued the cause for appellant Attorney General of New Jersey (*Irwin I. Kimmelman,* Attorney General, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*David H. Ben-Asher*, Essex County Counsel, argued the cause for appellant *pro se (David H. Ben-Asher*, attorney; *Janice Falivena*, Assistant County Counsel, on the briefs).

*John C. Pidgeon*, First Assistant Corporation Counsel, argued the cause for appellant City of Newark (*Rosalind Lubetsky Bressler*, Corporation Counsel, attorney).

*Michael J. Hogan*, Burlington County Solicitor, argued the cause for appellant *pro* se.

*John F. Neary* argued the cause for respondent Advisory Committee on Professional Ethics (*Connell, Foley & Ceiser*, attorneys; *John F. Neary* and *Theodore W. Geiser*, of counsel).

*Fred G. Stickel, III*, General Counsel, submitted a letter in lieu of brief on behalf of *amicus curiae*, New Jersey Institute of Municipal Attorneys.

The opinion of the Court was delivered by

HANDLER, J.

The issue in this case is whether a municipal attorney may represent both the municipality and individual officials or employees of that municipality when all have been sued as co-defendants in a civil rights action under 42 *U.S.C.* § 1983. The Supreme Court's Advisory Committee on Professional Ethics (ACPE or Committee) ruled in *Opinion 552* that it is never proper for an attorney simultaneously to represent a governmental entity and any of its officials or employees when they are co-defendants in such a civil rights action. We granted motions by interested parties for a meritorious review of *Opinion 552*. For the reasons stated in this opinion, we modify the determination of the ACPE.

I.

■ Resolution of the ethics issues addressed by *Opinion 552*, 115 *N.J.L.J.* 96 (1985), requires an overview of 42 *U.S.C.* § 1983 and the kinds of law suits that may be brought under this enactment. The statute provides:

[E]very person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

The rights protected under this enactment are principally (1) due-process rights, (2) equal-protection rights, (3) privileges and immunities of citizens, (4) rights owing their existence to federal functions, and (5) rights created by federal statutes. *C.J. Antineau,* Federal Civil Rights (1971).

While § 1983 refers to the culpable party as "every person," local government entities, as well as their individual officials and employees, can be held accountable under § 1983. *Monell v. New York City Dept of Soc. Servs.,* 436 *U.S.* 658, 98 *S.Ct.* 2018, 56 *L.Ed.*2d 611, 635 (1978). To recover from an official or employee, it is enough to show that such a person acting under color of state law caused the deprivation of a federal right. *Monroe v. Pape,* 365 *U.S.* 167, 81 *S.Ct.* 473, 5 *L.Ed.*2d 492 (1961). In contrast, local governmental bodies are liable under § 1983 only for wrongful actions that were taken to implement or execute a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body. *Monell v. New York City Dept of Soc. Servs., supra.* Significantly, local government bodies are not liable under § 1983 on a *respondeat superior* theory for every deprivation inflicted under color of state law by a local official. *Id.* 436 *U.S.* at 691, 98 *S.Ct.* at 2036, 56 *L.Ed.*2d at 636. It is evident therefore that under varying circumstances an aggrieved person can sue either a local government official, or the government entity that employs the official, or both, and different remedial relief will be available in terms of the identities of the parties-defendant. When both an entity and official are named as defendants, a conflict of interest between them may arise. This actual or potential conflict of interest poses the ethical issue that is the crux of *Opinion 552.*

In a § 1983 suit against both the governmental entity and individual government officials, the governmental entity, in an effort to shift liability, may claim that the assertedly wrongful conduct of the individuals was unauthorized and outside the scope of the employment. Conversely, in his or her defense, an employee-defendant may claim that the alleged offending conduct was taken pursuant to an official governmental policy or directive and that the governmental entity is the party properly responsible and ultimately liable. Thus, under the defenses asserted or available, one party-defendant may seek to avoid or lessen its exposure at the expense of the other.

The Committee in *Opinion 552* recognized that where a governmental official or employee has been named as a co-defendant in a § 1983 civil rights action against a municipality, the attorney who undertakes representation of both defendants may be in a situation of potential conflict. Indeed, the Committee was of the view that a potential conflict of interests was almost invariably present in these situations, and therefore such potential conflicts could be overcome effectively only by an absolute prohibition against multiple representations. The Committee considered that an alternative approach consisting of an *ad hoc* avoidance of conflicts of interest on an individual, case-by-case basis was too uncertain and inconsistent to be the basis for a satisfactory and workable rule. *Ibid.*

We agree with the Committee that there is undoubtedly a concern here for potential conflicts. However in view of the fact that in certain § 1983 actions no conflict of interest problems will ever exist, or that in others the cause may be summarily disposed without factual controversy as to the respective roles of the defendants, an absolute rule requiring separate counsel at the initial pleading stages is not required to adhere to traditional ethical precepts. We believe that where a potential conflict of interests may be present, it is not necessary to abandon the ethics guidelines of the Rules of Professional Conduct, which control generally the responsibility of attorneys

confronted with conflicts of interests in the representation of clients.

## II.

The overbreadth of an absolute bar against multiple-client representation in virtually all § 1983 civil rights actions can be illustrated by several prototypical situations. The overinclusiveness of the restriction is most apparent in those circumstances where a governmental officer or employee is charged by the complaint solely in an "official capacity," as opposed to when such an individual is sued in his "personal capacity." Personal-capacity suits seek to impose personal liability upon a governmental official for actions he takes under color of state law. *See, e.g., Scheuer v. Rhodes,* 416 *U.S.* 232, 237–238, 40 *L.Ed.*2d 90, 94 *S.Ct.* 1683 [1686–87] 71 Ohio Ops.2d 474 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services,* 436 *U.S.* 658, 690, n. 55, 98 *S.Ct.* 2018 [2035, n. 55] 56 *L.Ed.*2d 611 (1978). As long as the government entity receives notice of an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt,* 469 *U.S.* at ——, 105 *S.Ct.* 873, 83 *L.Ed.*2d 878. It is *not* a suit against the official personally, for the real party interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself [*Kentucky v. Graham,* —— *U.S.* ——, ——, 105 *S.Ct.* 3099, 3105, 87 *L.Ed.*2d 114, 121 (1985).]

On its face, *Opinion 552* would require independent counsel for a municipal official even where a § 1983 complaint alleges no more than that the employee-defendant took actions pursuant to an official policy of the municipality. In other situations, even when pleadings are susceptible of suggesting a cause of action against the individual official or employee in a "personal capacity," it may otherwise appear, or the government body may concede, that the § 1983 action against the individual is of the "official capacity" variety, *i.e.,* that the official or employee acted in furtherance of official policy. In these contexts, no conflict of interests exists. The official is not the "real" defendant in terms of actual responsibility and ultimate liabili-

ty. See *Brandon v. Holt*, 469 *U.S.* ——, 105 *S.Ct.* 873, 83 *L.Ed.*2d 878 (1985); *Goodwin v. Circuit Court of St. Louis County*, 741 *F.*2d 1087, 1088–89 (8th Cir.) *cert.* denied —— *U.S.* ——, 105 *S.Ct.* 112, 83 *L.Ed.*2d 55 (1984); *Familias Unidas v. Briscoe*, 619 *F.*2d 391, 403 (5th Cir.1980); *Shadid v. Jackson*, 521 *F.Supp.* 87, 91 (E.D.Tex.1981). In such circumstances, there is realistically no possibility for a conflict of interests in the joint representation of the governmental agency and the individual defendant. Both parties will presumably raise the identical defense, namely, that the actions effectuated a governmental policy but no wrongful deprivation of federal rights occurred. *See Aetna Casualty and Sur. Co. v. United States*, 570 *F.*2d 1197, 1200 (4th Cir.), *cert.* denied 439 *U.S.* 821, 99 *S.Ct.* 87, 58 *L.Ed.*2d 113 (1978); *Sherrod v. Berry*, 589 *F.Supp.* 433, 438 (N.D.Ill.1984).

■ Moreover, even in personal-capacity suits there may be situations in which no conflict of interests can arise. *See Dunton v. County of Suffolk*, 580 *F.Supp.* 974 (E.D.N.Y.1983). In cases where only injunctive relief is sought or where compensatory damages are claimed alone or together with injunctive relief, no conflict will be found to exist if the responsibility for effectuating or providing such relief devolves upon the governmental body. With respect to responsibility for compensatory relief, government bodies often are contractually obligated to indemnify their officials for such damages. Any money judgment against an individual would ultimately be paid by the governmental body. For example, New Jersey construes its statutory defense and indemnification obligations under the Tort Claims Act, *N.J.S.A.* 59:10–1 to 4; *N.J.S.A.* 59:10A–1 to –6, as extending to the defense of actions brought pursuant to 42 *U.S.C.* § 1983. *See Davidson v. O'Lone*, 752 *F.*2d 817 (3d Cir.1984); see also *Gamble v. Florida Dept of Health and Rehabilitative Servs.*, 779 *F.*2d 1509 (11th Cir.1986) (the state through its risk management fund will indemnify its officers, employees, or agents in a § 1983 personal-liability damage action if they have not acted intentionally).

In the personal-capacity civil-rights actions, the critical question concerning improper and inappropriate multiple-client representation will typically involve those suits in which monetary damages are sought against both classes of defendants, the governmental entity and the individual government officials or employees, and not simply against the governmental entity. In some instances other factors, in addition to disparate financial liability, such as personal responsibility and the need for vindication in the face of particular charges, may be important to civil rights defendants, serving to drive them apart in their defenses. These may be another source of potential conflict.

The potential that conflicts of interests may arise exists whenever the claims asserted could subject the individual defendant to personal liability for which indemnification is unavailable.[1] *See Sherrod v. Berry, supra,* 589 *F.Supp.* at 438; *Bell v. City of Milwaukee,* 536 *F.Supp.* 462, 477–78 (E.D.Wis. 1982). An example is the claim giving rise to punitive damages. In both federal and state civil-rights actions, and tort actions under New Jersey law, punitive damages can be assessed against an individual on the basis of his intentional, malicious, or, in some cases, merely reckless conduct. *See Smith v. Wade,* 461 *U.S.* 30, 103 *S.Ct.* 1625, 1637, 75 *L.Ed.*2d 632 (1983); *City of Newport v. Fact Concerts, Inc.,* 453 *U.S.* 247, 266–67, 101 *S.Ct.* 2748, 2759, 69 *L.Ed.*2d 616 (1981); *DiGiovanni v. Pessel,* 55 *N.J.* 188 (1970); *Berg v. Reaction Motors Div.,* 37 *N.J.* 396 (1962). Nevertheless, municipalities are specifically immune from such punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc., supra.* Moreover, in all such cases the indemnification of the officer or employee for exemplary damages is precluded by New Jersey state law. *See*

---

[1] At the county and municipal level a potential for a conflict might exist with a claim for compensatory damages since, with limited exceptions, the indemnifications of county and municipal employees is not required by law. *N.J.S.A.* 59:10–4; see *N.J.S.A.* 40A:14–28 (indemnification for local firefighters); *N.J.S.A.* 40A:14–155 (indemnification for local police officers); *N.J.S.A.* 18A:16–6 (indemnification for school board officers and employees).

*N.J.S.A.* 59:10–1; *T & M Homes, Inc. v. Pemberton Township,* 190 *N.J.Super.* 637 (Law Div.1983).

It is the specter of punitive damages creating a conflict of interests that prompted the Committee to adopt its *per se* rule. The Committee previously determined that a municipal attorney may not represent any or all municipal officials who have been charged with willful civil-rights violations under 42 *U.S.C.* § 1983, even if the municipality is not a party to the suit. *Opinion 534,* 114 *N.J.L.J.* 53 (1984). In ruling that the municipal attorney could not represent any of the officials, the Committee noted that

> [i]n the event the Section 1983 action is successful and involves punitive damages, the matter of indemnification for costs and punitive damages is put in issue between the official and the municipality. Since the municipal attorney must be free to exercise his independent judgment in advising and defending the municipality on the indemnification claim, that municipal counsel cannot properly represent the municipal official against whom the action was brought. [*Id.* at 68.]

Due to the potential punitive damages liability of each official individually, the Committee ruled that each official must be represented by independent counsel. *Id.*

It is apparent that the conflicts of interests problems arising in this area are myriad and complex. However, while the potential for conflicts is real, experience indicates that the Court's ethics rules and guidelines can adequately protect the interests of all parties. *RPC* 1.7(a) provides that a lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless the lawyer has a reasonable belief that the representation will not adversely affect the relationship with the other client and each client has consented after a full disclosure of the circumstances. *RPC* 1.7(b) prevents a lawyer from representing a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person. This restriction is subject to the independent assessment of the lawyer who may retain both clients if he reasonably believes the representation will not be adversely affected, and the

clients agree to dual representation after a full disclosure of the circumstances is made by the attorney. *RPC* 1.7(b)(2).[2]

■ We recognize that under an exception to the consent-waiver rule, a public entity as a government client cannot consent to multiple representation that perpetuates or engenders a conflict of interests. *RPC* 1.7(a)(2). The nonavailability to government attorneys of the consent-waiver exception, which would otherwise allow dual representation of clients with conflicting interests, is dictated by special concerns over the appearance of impropriety in the public sector. In *In re Opinion 415, supra,* 81 *N.J.* at 324 we stated the rationale for the closer scrutiny: "[w]hen representation of public bodies is involved, the appearance of impropriety assumes an added dimension. Positions of public trust call for even more circumspect conduct." Due to the sensitivity of their roles, attorneys for governmental bodies are subject to closer scrutiny under the appearance-of-impropriety standard than non-governmental attorneys. *See Ross v. Canino,* 93 *N.J.* 402, 409 (1983); *In re Opinion 452 of the Advisory Comm. on Professional Ethics, supra,* 87 *N.J.* at 50; *Perillo v. Advisory Comm. on Profes-*

---

[2]The substantive standards of RPC 1.7 are derived from the former Disciplinary Rules and decisional authority addressing this subject matter. *See* DR 5–105 (refusing to accept or continue employment if the interests of another client may impair the independent professional judgment of the lawyer); DR 5–106 (settling similar claims of clients). In the absence of an actual conflict of interest, the appearance of impropriety alone may be a sufficient basis to bar an attorney from representing conflicting parties. *See In re Garber,* 95 *N.J.* 597, 609–11 (1984); *In re Opinion 452 of the Advisory Comm. on Professional Ethics,* 87 *N.J.* 45, 49; *Perillo v. Advisory Comm. on Professional Ethics,* 83 *N.J.* 366, 370–73 (1980); *In re Opinion 415,* 81 *N.J.* 318, 323 (1979); *see also In re Professional Ethics Opinion 452, supra,* 87 *N.J.* 48 (attorney or members of one law firm may not hold both the position of municipal prosecutor and a position of planning board attorney for the same municipality). *Opinion 366,* 100 *N.J.L.J.* 290 (1977) (attorney cannot represent board of adjustment in same municipality where his partner is municipal attorney); *Opinion 199; Opinion 164,* 92 *N.J.L.J.* 831 (1969) (attorney cannot accept appointment as attorney for municipal planning board when partner is an attorney for the same municipality).

*sional Ethics, supra,* 83 *N.J.* at 373; *In re Opinion 415, supra,* 81 *N.J.* at 324. Accordingly, in the case of an actual conflict in a § 1983 action involving multiple representation (for example, where a governmental body refuses to indemnify its co-defendant officials or employees) consent of the parties to joint representation will not satisfy the requirements of *RPC* 1.7. To this extent we agree with the Committee.

■ We believe that the appropriate rule for dealing with potential conflicts of interests in the context of a § 1983 action must be grounded upon common sense, experience, and realism. These considerations forcefully suggest that the joint representation of clients with potentially differing interests is permissible provided there is a substantial identity of interests between them in terms of defending the claims that have been brought against all defendants. The elements of mutuality must preponderate over the elements of incompatibility. *See Brown & Williamson Tobacco Corp. v. Daniel Int'l. Corp.,* 563 *F.*2d 671, 673 (5th Cir.1977); *see also Goodwin Motor Corp. v. Mercedes Benz of N. America, Inc.,* 172 *N.J.Super.* 263, 273 (App.Div.1980) (law firm may represent multiple plaintiffs in franchise termination and bankruptcy action); *DeLuca v. Kahn Brothers, Inc.,* 171 *N.J.Super.* 100, 107 (Law Div.1979) (township planning board and zoning board may cooperate and employ single counsel subject to ethical rule). This approach has been followed by the Committee itself in permitting dual representation in certain circumstances. *See, e.g., Opinion 509,* 111 *N.J.L.J.* 16 (1983) (representation of employer and employee in employee licensing proceeding); *Opinion 270,* 96 *N.J.L.J.* 1332 (1973) (representation of commercial association and individual business member); *Opinion 47,* 87 *N.J.L.J.* 449 (1964) (representation of husband and co-respondent in matrimonial matter). The Committee also tacitly acknowledged the viability of this approach in *Opinion 552.* While the Committee proscribed any joint representation by the attorney of the government employer and its employees in a § 1983 civil rights action, it ruled that there would be "no ethical prohibition on one attorney repre-

senting all of the individual co-defendants if the provisions of *RPC* 1.7 are complied with."

■  Admittedly, it will not be easy to apply this rule in all cases.  Critical to a determination that co-defendants with potentially conflicting interests have a substantial identity of interests that can be said to outweigh their potential conflicts is whether, under the facts involved, the defendants would present consistent defenses to the claims brought against them. *Kerry Coal Co. v. United Mine Workers of America,* 470 *F.Supp.* 1032, 1036–37 (W.D.Pa.1979); *Spindle v. Chubb/Pacific Indem. Group,* 89 *Cal.App.*3d 706, 152 *Cal.Rptr.* 776, 780 (Ct.App.1979).  In these circumstances, the representation of multiple parties may be permitted even if the positions may appear to be somewhat potentially conflicting. *Rice v. Baron,* 456 *F.Supp.* 1361, 1375 (S.D.N.Y.1978); *Realco Servs., Inc. v. Holt,* 479 *F.Supp.* 867, 875 (E.D.Pa.1979); *Brown & Williamson Tobacco Corp. v. Daniel Int'l. Corp., supra,* 563 *F.*2d at 673.  Joint representation will not automatically be prohibited due to an apparent divergence of interests on the face of the complaint. *Richmond Hilton Assocs. v. City of Richmond,* 690 *F.*2d 1086, 1089–90 (4th Cir.1982); *Supreme Court Directive dated October 8, 1970,* 93 *N.J.L.J.* 712 (1970); *see Opinion No. 156,* 92 *N.J.L.J.* 481 (1969).  Thus, joint representation will be permissible if it does not appear clearly from the pleadings or from early discovery that the claims against the governmental entity and its individual employees will result in different and inconsistent defenses, or will, if successful, probably lead to independent or several, rather than overlapping or joint, compensatory relief against each class of defendants.

### III.

In rejecting the ACPE's blanket, dual-representation ban and adopting a more individualized approach, we reflect the difficulty encountered in applying *per se* rules to varied ethical ques-

tions in the public sector.[3]  *See, e.g. In re Opinion No. 452*, 87 *N.J.* 45, 50 (1981); *Perillo v. Advisory Comm. on Professional Ethics, supra; In re Dolan*, 76 *N.J.* 1 (1978).  As in other areas, the problem of multiple representation is best addressed by an evaluation by the individual attorney of the circumstances of each case, so that he or she may determine whether the common representation of the prospective clients can be undertaken.  *Schear v. Elizabeth*, 41 *N.J.* 321, 328 (1964); *accord In re Opinion 415, supra*, 81 *N.J.* 324 (1979); *Opinion 333*, 99 *N.J.L.J.* 496 (1976); *Opinion 100*, 89 *N.J.L.J.* 696 (1966).  In every such case the attorney will have to be satisfied based on objective reasonableness that there is no direct adversity between the defendants and that joint representation will not adversely affect the relationship of either class of defendants, *RPC* 1.7(a), nor materially limit his or her professional responsibilities towards any such client-defendant, *RPC* 1.7(b).  Although this case-by-case approach cannot guarantee that ethical problems will not arise, the danger is not of sufficient weight to warrant a *per se* prohibition.

We are additionally moved by the severe financial strains the *per se* rule imposes on local governments and those individual employees who are forced to obtain independent counsel.  *See Reardon v. Marlayne, Inc.*, 83 *N.J.* 460, 473 (1980).  Such burdens are not justified in the absence of a demonstrable, albeit potential, conflict of interests realistically militating against effective representation and lawyer-client fidelity.  *See*

---

[3] Only in the most sensitive circumstances have we imposed a *per se* rule of disqualification for potential conflicts of interest.  In the past we have by administrative directive prohibited the joint representation of driver and passenger in automobile negligence cases (other than those involving husband and wife or parent and child).  In *Opinion 243*, 95 *N.J.L.J.* 1145 (1972), the ACPE recognized the inappropriateness of usurping the "judgment [that must] be made by each attorney as the situation arises ..."  It noted that "any attempt by this committee to promulgate guidelines would be presumptuous and raise the inference that lawyers could not be trusted to make proper decisions" as to whether they could adequately represent both parties.  *Accord Opinion 527*, 113 *N.J.L.J.* (1984).

*State v. Bell,* 90 *N.J.* 163 (1982) (multiple representation in the same criminal action by a public defender's office does not in itself give rise to a presumption of prejudice); *State Health Planning and Coordinating Council v. Hyland,* 161 *N.J.Super.* 468, 476 (App.Div.1978); *Opinion 333, supra;* Epstein, *Conflicts of Interest: A Trial Lawyer's Guide* (1984), at 22. Moreover, as noted by the Committee itself, the blanket prohibition of *Opinion 552* will also encourage plaintiffs to name numerous officials solely to improve their bargaining position with the government defendant by forcing defendants to engage separate independent counsel. *See Van Horn v. Wm. Blanchard Co.,* 88 *N.J.* 91, 99 (1981) (dissenting opinion). As a result, the administration of justice will suffer from the increased litigational burden, as will the dispensation of justice, since government defendants could be bludgeoned by the rule into settling cases for reasons wholly unrelated to the merits of any liability claim.

It is of some significance that in a given case a government body may affirmatively remove any potential conflict of interest. See discussion *supra* at 200. If the governmental body chooses to reduce its legal costs by providing joint representation, it then will be necessary that the entity to take steps to reduce or eliminate any potential conflict of interests that may otherwise exist. For example, the government body could in an appropriate case agree that the officials or employees were acting within the scope of their duties, and waive any claim it may have against the employee for reimbursement of legal expenses and agree to indemnify the employee for the amount of any individual judgment.

In the event that a municipal attorney represents co-defendants in a § 1983 action involving possible conflicts of interests, the administration of justice could be affected. To that end the attorney will be required to alert the defendants at the earliest opportunity that the case may present problems in terms of joint representation. The attorney will also be

charged with bringing conflicts of interests matters to the attention of the court, which should take steps to assure that notice of any potential conflict of interests is provided to affected litigants and that the ethics problem is resolved satisfactorily and made a matter of record. *See Dunton v. County of Suffolk,* 729 *F.*2d 903 (2d Cir.1984); *Manganella v. Keyes,* 613 *F.Supp.* 795, 799 (D.Conn.1985); *see also State v. Belluci,* 81 *N.J.* 531 (1980) (trial court is obligated to protect defendant's rights to effective assistance of counsel and when multiple representation is involved, situation must be explored on record both to ensure that defendant is aware of potential hazards and to secure proper waiver). In that way lawyers will be encouraged to act reasonably and responsibly, the essential interests of clients will be protected, and the interests of justice will be secured.

In conclusion, we determine that the *per se* ban as formulated by the Committee, prohibiting joint representation of multiple defendants in all § 1983 civil-rights actions, is too broad. We rule that in situations in which there is no actual conflict of interests, or the likelihood of an actual conflict of interests is remote and poses no realistic threat to the effective representation of such multiple defendants, an attorney should not be prohibited from representing both parties. We rule further that in cases where there is a potential conflict of interests joint representation may be allowed, provided the guidelines of our current Rules of Professional Conduct are followed by the attorney furnishing such joint representation. Stated somewhat differently, we rule that in a § 1983 action, a government attorney is precluded from representing co-defendant government officers or employees only where the allegations or the facts as developed present an actual conflict of interests or the realistic possibility of such a conflict. If no such conflict is presented, then a government attorney may simultaneously represent as co-defendants governmental officers or employees and the government entity. This joint representation, however, is conditioned upon the continuing obligation of the attorney to

ascertain whether there exist potential conflicts of interests among the defendants, and if, under the circumstances, such potential conflicting interests emerge that outweigh the mutuality or similarity of the interests among defendants, the attorney shall be obligated promptly to terminate such joint representation and initiate steps for the separate representation of the defendants.

We therefore accordingly modify *Opinion 552*.

*For modification*:  Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*:  none.