**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1575-23

ALLSTATE NEW JERSEY INSURANCE
COMPANY, ALLSTATE NEW JERSEY
PROPERTY AND CASUALTY
INSURANCE COMPANY, ALLSTATE
INSURANCE COMPANY, ALLSTATE
FIRE & CASUALTY INSURANCE
COMPANY, ALLSTATE NORTHBROOK
INDEMNITY COMPANY, and ALLSTATE
PROPERTY AND CASUALTY
INSURANCE COMPANY,

       Plaintiffs-Appellants,

v.

CARTERET COMPREHENSIVE
MEDICAL CARE, PC, d/b/a MONROE
COMPREHENSIVE MEDICAL CARE,
d/b/a COMPREHENSIVE MEDICAL
CARE, d/b/a FASSST SPORT, d/b/a
COMPREHENSIVE VEIN CARE,
INIMEG MANAGEMENT COMPANY,
INC., 311 SPOTSWOOD-ENGLISHTOWN
ROAD REALTY, LLC, 72 ROUTE 27
REALTY, LLC, SAME DAY
PROCEDURES, LLC, MID-STATE
ANESTHESIA CONSULTANTS, LLC,
NORTH JERSEY PERIOPERATIVE
CONSULTANTS, PA, INTERVENTIONAL

PAIN CONSULTANTS OF NORTH
JERSEY, LLC, d/b/a PAIN MANAGEMENT
PHYSICIANS OF NEW JERSEY, d/b/a
METRO PAIN CENTERS, d/b/a METRO
PAIN AND VEIN, SOOD MEDICAL
PRACTICE, LLC, ONE OAK MEDICAL
GROUP, LLC, d/b/a NEW JERSEY VEIN
TREATMENT CLINIC, ONE OAK
ORTHOPAEDIC & SPINE GROUP, LLC,
ONE OAK HOLDING, LLC, JOSEPH
BUFANO, JR., D.C., CHRISTOPHER
BUFANO, MICAH LIEBERMAN, D.C.,
RICHARD J. MILLS, M.D., JENNIFER M.
O'BRIEN, ESQ., GERALD M. VERNON,
D.O., D.C., ALVIN F. MICABALO, D.O.,
JOSE CAMPOS, M.D., JOHN S. CHO, M.D.,
MICHAEL C. DOBROW, D.O., RAHUL
SOOD, D.O., SACHIN SHAH, M.D.,
FAISAL MAHMOOD, M.D., RAVI K.
VENKATARAMAN, M.D., MANGLAM
NARAYANAN, M.D., SHANTI
EPPANAPALLY, M.D.,

     Defendants-Respondents.

_____

     Argued December 5, 2024 – Decided January 9, 2025

     Before Judges Gilson, Firko, and Bishop-Thompson.

     On appeal from an interlocutory order of the Superior
     Court of New Jersey, Law Division, Middlesex County,
     Docket No. L-1469-23.

     Thomas Hall argued the cause for appellants (Pashman
     Stein Walder Hayden, PC, and McGill and Hall LLC,
     attorney; Michael S. Stein and Thomas Hall, of counsel

and on the briefs; Janie Byalik and Darcy Baboulis-Gyscek, on the briefs).

Jeffrey B. Randolph argued the cause for respondents Carteret Comprehensive Medical Care, PC, d/b/a Monroe Comprehensive Medical Care, d/b/a Comprehensive Medical Care, d/b/a Fassst Sport, d/b/a Comprehensive Vein Care, Inimeg Management Company, Inc., 311 Spotswood-Englishtown Road Realty, LLC, 72 Route 27 Realty, LLC, Joseph Bufano, Jr., D.C., Christopher Bufano, Micah Lieberman, D.C., Richard Mills, M.D., Jennifer M. O'Brien, Esq., Gerald M. Vernon, D.O., Michael C. Dobrow, D.O., and Alvin F. Micabalo, D.O. (Law Office of Jeffrey Randolph, LLC, attorneys; Jeffrey B. Randolph, on the brief).

Brian M. Block argued the cause for respondents Mid-State Anesthesia Consultants, LLC, Interventional Pain Consultants of North Jersey, LLC, Sood Medical Practice, LLC, Rahul Sood, D.O., and Sachin Shah, M.D. (Mandelbaum Barrett PC, attorneys; Andrew Gimigliano, Brian M. Block, Mohamed H. Nabulsi, and Michael S. Kivowitz, on the brief).

PER CURIAM

On leave granted, plaintiffs appeal from two orders that denied their motion to disqualify the law firms of Jeffrey Randolph, LLC (the Randolph Firm) and Mandelbaum Barrett, PC (the Mandelbaum Firm) from representing two groups of co-defendants in this insurance fraud action. The Randolph Firm is representing twelve defendants, and the Mandelbaum Firm is representing five defendants. Plaintiffs contend that there are existing conflicts of interest among

defendants in each group, as well as significant risks of conflicts developing among them. So, they argue those conflicts preclude the law firms from representing the respective groups of defendants.

For the reasons explained in this opinion, we affirm in part, reverse in part, and remand for further proceedings. We hold that there are significant risks that conflicts will arise under RPC 1.7(a)(2) among the twelve defendants represented by the Randolph Firm and the five defendants represented by the Mandelbaum Firm. Nevertheless, having reviewed the record developed to date, we conclude that the Mandelbaum Firm has demonstrated, at least at this early stage of the litigation, that its five clients have provided informed consents waiving the potential conflicts. Therefore, we affirm the order denying plaintiffs' motion to disqualify the Mandelbaum Firm without prejudice. We note, as the trial court did, that if conflicts among the five clients develop, the Mandelbaum Firm will have to withdraw from representing any defendant who has a conflict with the other defendants.

By contrast, the Randolph Firm did not submit written consents from all twelve of its clients for in camera review by the trial court. Instead, it submitted only one retainer agreement. Thus, we vacate the order that denied the motion

4

to dismiss the Randolph Firm and remand for further proceedings as to that aspect of the motion consistent with this opinion.

I.

Plaintiffs are six related insurance companies: Allstate New Jersey Insurance Company; Allstate New Jersey Property and Casualty Insurance Company; Allstate Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Northbrook Indemnity Company; and Allstate Property and Casualty Insurance Company (plaintiffs or Allstate). Allstate provides no-fault automobile insurance policies in New Jersey, under which insureds can recover personal injury protection (PIP) benefits if they are injured in an automobile accident. When insureds receive medical treatment, they may, and typically do, assign their PIP benefits to their medical providers. The medical providers can then seek payment from insurers, like Allstate. See N.J.S.A. 39:6A-4 (allowing PIP benefits to be assigned "to a provider of service benefits").

In March 2023, Allstate filed a nine-count complaint in the Law Division against over thirty defendants, including several medical practices, the owners of those practices, and current and former physicians and administrators working at or with those medical practices. Allstate alleges that from 2008 through 2022, defendants conspired to obtain over $1.7 million in PIP benefits

A-1575-23

from Allstate through more than 800 false and misleading medical claims.  In its complaint, Allstate asserts that defendants' actions violated the Insurance Fraud Prevention Act (the Fraud Act), N.J.S.A. 17:33A-1 to -30, the New Jersey Anti-Racketeering Act (RICO), N.J.S.A. 2C:41-1 to -6.2, the Anti Self-Referral Law, N.J.S.A. 45:9-22.4 to -22.9, and the Corporate Practice of Medicine Doctrine, N.J.A.C. 13:35-6.16.

In support of its claims, Allstate alleges that numerous defendants engaged in kickback schemes, illegal self-referrals, and patterns of fraud and racketeering in providing the services for which defendants obtained payments from Allstate.  Thus, Allstate seeks declaratory judgments, including a declaration that one defendant medical practice was illegally structured and was not entitled to receive PIP benefits.  As remedies, Allstate seeks damages, including the disgorgement of over $1.7 million that Allstate paid to defendants, treble damages, injunctive relief, and attorneys' fees.

In response to the complaint, seventeen defendants organized themselves into two groups and each group hired one law firm.  The Randolph Firm assumed representation of twelve defendants:  Carteret Comprehensive Medical Care, P.C. (CCMC); Inimeg Management Company, Inc.; Joseph Bufano, Jr., D.C. (J. Bufano); Jennifer M. O'Brien, Esq.; Christopher Bufano (C. Bufano); Gerald M.

A-1575-23

Vernon, D.O.; Micah Lieberman, D.C.; Richard J. Mills, M.D.; Michael C. Dobrow, D.O.; Alvin F. Micabalo, D.O.; 311 Spotswood-Englishtown Road Realty, L.L.C.; and 72 Route 27 Realty, L.L.C. (collectively, the CCMC defendants).

The Mandelbaum Firm assumed representation of five defendants: Rahul Sood, D.O.; Sachin Shah, M.D.; Midstate Anesthesia Consultants, L.L.C.; Interventional Pain Consultants of North Jersey, L.L.C., d/b/a Pain Management Physicians of New Jersey, d/b/a Metro Pain Centers, d/b/a Metro Pain and Vein; and Sood Medical Practice, L.L.C. (collectively, the Sood defendants).

Concerning the CCMC defendants, Allstate alleges that J. Bufano owned and controlled CCMC and used it to orchestrate an insurance fraud scheme by conspiring with co-defendants "to submit false and misleading claims for insurance benefits." In that regard, Allstate contends that defendants fraudulently billed it for medical services that were not necessary or appropriate, not provided, were based on services that were forced to be provided by doctors of lower licensure or no licensure or were the product of illegal self-referrals. Allstate also claims that while CCMC and its related companies "purport to be owned by a medical doctor . . . they are in fact illegally owned and controlled by J. Bufano."

As to the individual CCMC defendants, Allstate alleges that J. Bufano "spearheaded CCMC's daily operations and strategic decisions[,] directed defendants to unlawfully bill for and profit from medical services provided to CCMC patients . . . [and] [compelled] plenary physicians to perform or prescribe clinically unnecessary services, pay and receive kickbacks, and make illegal referrals." Concerning C. Bufano, J. Bufano's brother and CCMC's "Director of Operations," Lieberman, CCMC's "Clinical Director," Mills, CCMC's "Medical Director," and O'Brien, CCMC's "General Counsel" and "Chief Compliance Officer," Allstate asserts that each of those defendants assisted J. Bufano in carrying out the insurance fraud schemes and related illegal activities.

Regarding the Sood defendants, Allstate alleges that Sood either owned or controlled several co-defendant medical service providers, and he "provided medical services on behalf of CCMC as part of the corporate practice and kickback schemes." Allstate goes on to allege that Shah's role within those medical service providers was "more circumscribed" as he was "subordinate to Sood's direction and control," but he also participated in the insurance fraud schemes. [1]

---

[1] At oral argument before us, Allstate stated that it was not concerned by the joint representation of Sood and the co-defendant medical services providers he

In August 2023, Allstate moved to disqualify the Randolph Firm from representing the CCMC defendants and the Mandelbaum Firm from representing the Sood defendants. Allstate argued that there were significant risks that each firm's representation of multiple co-defendants would materially limit the firm's responsibility to other co-defendants in violation of RPC 1.7(a)(2). In that regard, Allstate asserted that there were incompatibilities among the various defendants' defenses, potential crossclaims, third-party claims, and settlement possibilities. In particular, Allstate argued that there were inherent conflicts of interest because certain of its claims, including its claims for violations of the Fraud Act, would be subject to the Comparative Negligence Act (the CN Act), N.J.S.A. 2A:15-5.1 to -5.4. Therefore, if Allstate prevailed at trail, the liability verdict and damages would have to be apportioned among defendants, which would inevitably lead to conflicts of interests.

Allstate also asserted that for each group of jointly represented defendants, one defendant was paying the legal fees for all other jointly represented defendants. Regarding the CCMC defendants, Allstate asserted that J. Bufano was paying all the Randolph Firm's legal fees for himself, as well as

owned or controlled. Instead, Allstate explained that it was challenging the Mandelbaum Firm's joint representation of Sood and Shah.

the other defendants. Concerning the Sood defendants, Allstate contended that Sood was paying all the Mandelbaum Firm's legal fees for himself and the other four defendants.

In response, the CCMC and Sood defendants argued that there were no actual, concurrent conflicts of interests regarding their decision to be jointly represented by the Randolph and Mandelbaum Firms. Defendants asserted that they had signed informed consent waivers, and they had no plans to assert claims against each other. Further, defendants contended that their interests were aligned, and Allstate was attempting to misuse the ethical rules to gain a tactical litigation advantage.

On October 27, 2023, the trial court entered two orders denying Allstate's motion to disqualify the Randolph Firm and the Mandelbaum Firm. The trial court recognized that the CN Act might create conflicts of interests "if this matter proceeds to trial," but the court did not find that there were existing conflicts of interests. The trial court also noted that defendants had "signed informed consent waivers to any potential conflicts of interest, there [were] no pending cross or third-party claims being pursued by any defendant against another, and [that the two law firms were] confident in their ability to represent their clients." As to the waivers, the trial court found that defendants were

"properly informed by their attorneys of the potential risks involved with multi-defendant representation."  Thus, the trial court concluded that Allstate's contentions were largely based on speculation, and it found that, at least at this time, the joint representation of the CCMC defendants and the Sood defendants were permissible.

We granted Allstate's motion for leave to appeal the orders denying its motion to disqualify the Randolph and Mandelbaum Firms.  At the same time that it entered the orders denying Allstate's disqualification motion, the trial court entered orders granting motions filed by certain defendants to compel all of Allstate's claims to arbitration and to dismiss Allstate's complaint.  Allstate appealed from those orders as of right under Rule 2:2-3(b).  We have separately issued a published opinion reversing the orders compelling arbitration and dismissing Allstate's complaint.  See Allstate v. Carteret Comprehensive Medical Care, P.C., ___ N.J. Super. ___ (App. Div. 2025).

## II.

On appeal, Allstate makes three arguments.  First, it contends that the trial court failed to recognize defendants' inherent conflicts of interest in a case subject to the CN Act.  In that regard, Allstate argues that there should be a per se conflict precluding joint representation of defendants who, if there is a

settlement or verdict against them, must apportion liability and damages among themselves pursuant to the CN Act. Second, Allstate contends that defendants' per se conflicts are unwaivable, particularly in a situation where one defendant is paying the legal fees of another group of defendants. Third, Allstate argues that should we find that defendants' conflicts are waivable, the current record was insufficient for the trial court to assess the sufficiency of the informed consents and, therefore, we should remand for further proceedings. In making that argument, Allstate asserts that the consent waivers are not part of the record and that the trial court relied on documentation submitted by some, but not all, jointly represented defendants.

### III.

"[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010). See also Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 274 (2012). The burden is on the movant to prove a basis for disqualification. State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015).

When deciding a motion to disqualify counsel, courts must "balance competing interests, weighing the need to maintain the highest standards of the

profession against a client's right freely to choose his [or her] counsel." Twenty-First Century Rail Corp., 210 N.J. at 273-74 (quoting Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988)) (internal quotation marks omitted). In striking that balance, courts must consider that "a person's right to retain counsel of his or her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." Id. at 274 (quoting Dewey, 109 N.J. at 218) (internal quotation marks omitted).

Motions for disqualification should be "viewed skeptically in light of their potential abuse to secure tactical advantage." Escobar v. Mazie, 460 N.J. Super. 520, 526 (App. Div. 2019). Accordingly, courts conduct a fact-specific analysis in determining if a conflict exists. Dewey, 109 N.J. at 205. Nevertheless, if there is "any doubt as to the propriety of an attorney's representation of a client, such doubt must be resolved in favor of disqualification." Est. of Kennedy v. Rosenblatt, 447 N.J. Super. 444, 451 (App. Div. 2016) (quoting Herbert v. Haytaian, 292 N.J. Super. 426, 438-39 (App. Div. 1996)) (internal quotation marks omitted).

A.    The RPCs.

Under RPC 1.7, a lawyer or a law firm is prohibited from representing a client, or more than one client, if there is a concurrent conflict of interest. In that regard, RPC 1.7(a) provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
> >
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . .
>
> [RPC 1.7(a).]

RPC 1.7(b) then explains that under certain circumstances, clients may waive conflicts of interest by giving "informed consent." That portion of the rule reads as follows:

> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> > (1) each affected client gives informed consent, confirmed in writing, after full disclosure and consultation. . . . When the lawyer represents multiple clients in a single matter, the consultation shall include an explanation of the common representation and the advantages and risks involved;

14

> (2) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (3) the representation is not prohibited by law; and
>
> (4) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.
>
> [RPC 1.7(b).]

RPC 1.7 embodies "the fundamental understanding that an attorney will give 'complete and undivided loyalty to the client' . . . [and] 'should be able to advise the client in such a way as to protect the client's interests.'" State ex rel. S.G., 175 N.J. 132, 139 (2003) (quoting In re Dolan, 76 N.J. 1, 9 (1978)). When a conflict develops, an attorney must withdraw from the representation of all parties. See McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 497 (App. Div. 2011) (explaining that "when [jointly represented parties'] interests become adverse, counsel is required to completely withdraw from the representation of each client"). See also DeBolt v. Parker, 234 N.J. Super. 471, 484 (Law Div. 1998) (holding that "[w]hen an attorney represents potentially and foreseeably adverse interests, . . . and the adversity becomes actual, counsel must withdraw from any representation of both parties"). Accordingly, a conflict of interest

may preclude a lawyer from representing co-defendants.  See In re Petition for Rev. of Op. 552 (Op. 552), 102 N.J. 194, 205 (1986); Kramer v. Ciba-Geigy Corp., 371 N.J. Super. 580, 602-05 (App. Div. 2004).

B.     Allstate's Standing to Seek the Disqualification of Defense Counsel.

As a preliminary matter, the Sood defendants argue that Allstate lacks standing to seek to disqualify their counsel under RPC 1.7.  In support of this argument, Allstate cites In re Tr. for the Benefit of Duke (Duke), 305 N.J. Super. 408 (Ch. Div. 1995), aff'd o.b., 305 N.J. Super. 407 (App. Div.).  Initially, we note that Duke is not binding on us.  Moreover, existing precedent affords standing to an adverse party who could be affected if the lawyer for the other party must withdraw at a later date.

"Standing 'refers to the plaintiff's ability or entitlement to maintain an action [or seek relief from] the court.'"  In re Baby T., 160 N.J. 332, 340 (1999) (quoting N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409 (App. Div. 1997)).  To possess standing, a party "must have a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and there must be a substantial likelihood that the [party] will suffer harm in the event of an unfavorable decision."  N.J. Citizen Action, 296 N.J. Super. at 409-10.

A-1575-23

In <u>Dewey</u>, the New Jersey Supreme Court recognized that "[u]nder any circumstances the disqualification of an attorney in pending litigation does a great disservice to the affected client. As well, the delay caused by such disqualification has an impact not only on the other parties to the affected litigation but on the efficiency of the judicial system." <u>Dewey</u>, 109 N.J. at 221. Considering that harm, "[o]ur jurisprudence has entertained disqualification motions filed by the attorney's adversary." <u>Van Horn v. Van Horn</u>, 415 N.J. Super. 398, 409 (App. Div. 2010) (citing <u>Trupos</u>, 201 N.J. at 450-52; <u>Dewey</u>, 109 N.J. at 204-05; <u>Stengart v. Loving Care Agency, Inc.</u>, 408 N.J. Super. 54, 76-77 (App. Div. 2009)). <u>See also</u> <u>Twenty-First Century Rail Corp.</u>, 210 N.J. at 273-74 (where the Court evaluated "motions for the disqualification of counsel for an adversary"); <u>State v. Davis</u>, 366 N.J. Super. 30, 37 (App. Div. 2004) (explaining that "we have no doubt that the State possess the standing to pursue its [motion to disqualify defense counsel]").

Applying these well-established principles, we conclude Allstate has standing to seek to disqualify counsel for the CCMC and Sood defendants.

C.    Whether There Are Per Se Conflicts.

Allstate asked us to "clarify novel issues of law and [] hold that . . . joint representation in a [CN Act] joint liability case triggers an automatic per se

17

conflict in cases of intentional torts, and/or concerted acts." We decline to declare a per se rule, particularly on this record, which is not fully developed.

The CN Act applies to "a broad range of civil actions." Liberty Ins. Corp. v. Techdan, LLC, 253 N.J. 87, 107 (2023). Nevertheless, to date the New Jersey Supreme Court has not declared a per se conflict because apportionment may take place under the CN Act. In that regard, the New Jersey Supreme Court has explained that "[o]nly in the most sensitive circumstances [has the Court] imposed a per se rule of disqualification for potential conflicts of interest." Op. 552, 102 N.J. at 206 n.3.

We, therefore, decline to declare a per se conflict based on the potential apportionment that may take place under the CN Act. Instead, consistent with existing caselaw, we will evaluate the alleged conflicts in a "highly fact specific" manner, In re State Grand Jury Inv. (Grand Jury), 200 N.J. 481, 491 (2009) (quoting State v. Harvey, 176 N.J. 522, 529 (2003)), and "engage[] in the required 'painstaking analysis of the facts,'" Dewey, 109 N.J. at 205 (quoting Reardon v. Marlayne, Inc., 83 N.J. 460, 469 (1980)).

D.    Whether There Are Significant Risks of Conflicts.

Consistent with the mandates of RPC 1.7, we have explained that "joint representation of multiple parties whose interests are potentially diverse is

permissible only if 'there is a substantial identity of interests between them in terms of defending the claims that have been brought against all defendants.'" Hill v. N.J. Dep't of Corr., 342 N.J. Super. 273, 309 (App. Div. 2001) (quoting Op. 552, 102 N.J. at 204). Accordingly, we have held that a conflict of interest existed when one firm sought to represent three defendants whose interests in attributing fault to each other were in conflict. Wolpaw v. Gen. Accident Ins. Co., 272 N.J. Super. 41, 45 (App. Div. 1994).

In Wolpaw, an insurance company assigned "a single firm" to represent a homeowner, the homeowner's sister, and the sister's eleven-year-old son, who had accidentally shot a neighbor playmate with an air rifle. Id. at 43-44. We held that the three defendants were entitled to separate counsel because the "three insureds had the common interest of minimizing the amount of [the injured neighbor's] judgment and maximizing the percentage of fault attributable to the other defendants. However, their interests in maximizing the percentage of the other insurers' fault and minimizing their own were clearly in conflict." Id. at 45. Notably, the counsel in Wolpaw was assigned to represent the defendants pursuant to a homeowners' insurance policy. Id. at 43-44. Here, defendants voluntarily agreed to be jointly represented by the Randolph Firm

and the Mandelbaum Firm. Additionally, <u>Wolpaw</u> did not explore the issue of informed consent.

The record in this matter establishes that there are significant risks that conflicts will develop among the CCMC defendants and the Sood defendants. Defendants have a common interest in disputing the allegations against them, but as the case develops, they also may have an interest in seeking to minimize their own liability and maximize their co-defendants' liability. If Allstate's claims proceed to trial and there is a verdict against defendants, the liability and damages will have to be apportioned among defendants under the CN Act. <u>See</u> <u>Techdan</u>, 253 N.J. at 111-12 (holding that an insurer's Fraud Act claim is a "negligence action" to which the allocation-of-fault scheme of the CN Act applies); N.J.S.A. 2A:15-5.2(a) (directing that "the trier of fact shall make the following as findings of fact: . . . . [t]he extent, in the form of a percentage, of each party's negligence or fault"). That apportionment presents a significant risk that conflicts may develop among the jointly represented defendants because certain defendants may want to limit their own liability and argue that other co-defendants have a greater responsibility for the liability and damages.

Moreover, there are significant risks certain defendants may, as the facts develop, assert that other defendants had a greater role in the alleged fraud

schemes or compelled them to participate in the schemes. If those situations arise, one law firm could not ethically advise all defendants because of those conflicting interests.

Having determined that there are significant risks of conflicts developing among the jointly represented defendants, we examine whether those potential conflicts were properly waived under RPC 1.7(b).

E.     Whether the Risks of Conflicts Were Waived.

As already discussed, RPC 1.7(b) allows a lawyer or law firm to represent clients who have concurrent conflicts of interest, so long as all the clients provide written informed consents and "the representation is not prohibited by law." RPC 1.7(b)(3). "Joint representation will not automatically be prohibited due to an apparent divergence of interests on the face of the complaint." Op. 552, 102 N.J. at 205. The critical determination is whether the jointly represented defendants have common interests that outweigh their potential conflicts and whether the defendants will present consistent defenses to the claims brought against them. Ibid. Thus, joint representation is permissible "if it does not appear clearly from the pleadings or from early discovery that the claims against [defendants] will result in different and inconsistent defenses, or will, if successful, probably lead to independent or several, rather than

21

overlapping or joint, compensatory relief against each class of defendants." Ibid.

To apply these principles in this matter, it is necessary to examine the informed consents provided by the Sood defendants and the CCMC defendants.

1.    The Sood Defendants.

In opposition to Allstate's motion to disqualify the Mandelbaum Firm, the Sood defendants provided certifications from both Sood and Shah. Those certifications explained the advice that they had each received from the Mandelbaum Firm concerning the joint representation and detailed the written consent waivers that they had each signed. In addition, the written consent waivers were provided to the trial court for in camera review. Those consents have also been provided to us in a confidential appendix. Having reviewed the certifications and written consent waivers, we are satisfied that they meet each of the criteria under RPC 1.7(b).

2.    The CCMC Defendants.

The CCMC defendants did not provide certifications from each of the twelve defendants. Instead, only J. Bufano provided a certification. The record also does not establish that the trial court received written consent waivers from all twelve CCMC defendants for in camera review. Instead, it appears the trial

22

court received a retainer agreement from J. Bufano, which was not provided to this court.

The certification and retainer agreement from J. Bufano are insufficient to establish that all twelve CCMC defendants have provided informed written consent consistent with RPC 1.7(b). Consequently, we remand the portion of the motion concerning the disqualification of the Randolph Firm for further analysis by the trial court.

3. Payment of Legal Fees by One Defendant for Each Group of Jointly Represented Defendants.

Finally, we analyze whether the payment of legal fees by J. Bufano on behalf of all the CCMC defendants and by Sood on behalf of all the Sood defendants constitutes grounds for disqualification. Allstate argues that the payment arrangement is a third-party payor arrangement that should be prohibited. Therefore, Allstate argues that where co-defendants face joint liability, and their fees are being funded by a co-defendant represented by the same firm, there should be a per se rule of disqualification. We reject that argument.

"[W]hether an attorney may be compensated for his services by someone other than his client is governed in large measure by RPC 1.8(f) and, to a lesser

extent, RPC 1.7(a) and RPC 5.4(c)." Grand Jury, 200 N.J. at 485. The New Jersey Supreme Court has interpreted these rules, explaining:

> The overarching Rule, which purposely is written in the negative, forbids a lawyer from "accept[ing] compensation for representing a client from one other than the client unless [three factors coalesce]: (1) the client gives informed consent; (2) there is no interference with the lawyer's independence of professional judgment or with the lawyer-client relationship; and (3) information relating to representation of a client is protected" as provided in the RPCs.
>
> [Ibid. (quoting RPC 1.8(f)).]

In Grand Jury, the Court found that "[a] synthesis of RPCs 1.7(a)(2), 1.8(f), and 5.4(c) yields a salutary, yet practical principle: a lawyer may represent a client but accept payment, directly or indirectly, from a third party provided each of the six conditions [are] satisfied." Id. at 495. Those six conditions are:

> (1) The informed consent of the client is secured. . . .
>
> (2) The third-party payer is prohibited from, in any way, directing, regulating or interfering with the lawyer's professional judgment in representing his client. . . .
>
> (3) There cannot be any current attorney-client relationship between the lawyer and the third-party payer. . . .

24

(4) The lawyer is prohibited from communicating with the third-party payer concerning the substance of the representation of his client. . . .

(5) The third-party payer shall process and pay all such invoices within the regular course of its business, consistent with manner, speed and frequency it pays its own counsel.

(6) Once a third-party payer commits to pay for the representation of another, the third-party payer shall not be relieved of its continuing obligations to pay without leave of court brought on prior written notice to the lawyer and the client.

[Id. at 495-96 (citations omitted).]

Initially, we note that this case does not involve a purely third-party payor arrangement. Instead, two defendants are paying the fees of the other jointly represented defendants. We take judicial notice that it is not unusual for one defendant to pay the fees of another defendant. That payment situation often exists in employment matters where both the company and employees are sued. See Kramer, 371 N.J. Super. at 584-85 (acknowledging the validity of an indemnification agreement where the corporate employer agreed to pay attorneys' fees for its co-defendant employees). The question, therefore, becomes whether the attorney who is representing a group of defendants has provided adequate information to allow each defendant to make an informed

consent and, independently, whether the attorney believes he or she can represent the legal interests of all defendants.

Having examined the certifications and informed consents provided by Sood and Shah, we are satisfied that, at least at this stage of the proceedings, the Sood defendants have given their informed consent to be jointly represented, and that Shah is aware that Sood is paying for his defense. As we already noted, there needs to be further analysis on whether all the CCMC defendants have provided their informed consent, including to the payment arrangement.

IV.

In conclusion, we hold that there are significant risks of conflicts arising among the twelve defendants represented by the Randolph Firm and the five defendants represented by the Mandelbaum Firm. Notwithstanding that determination, we conclude that based on the current record, the Mandelbaum Firm has shown that its five clients have given informed consent to waive those potential conflicts at this early stage of litigation. The same cannot be said for defendants represented by the Randolph Firm. Accordingly, we vacate the order concerning the disqualification of the Randolph Firm and remand that motion for further analysis.

A-1575-23

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

27                                                                    A-1575-23